THE STATE OF OHIO, APPELLEE AND APPELLANT, *v.*
SCOTT, APPELLANT AND APPELLEE.

[Cite as State v. Scott (1980), 61 Ohio St. 2d 155.]

(Nos. 79-368 and 79-378—Decided February 6, 1980.)

156

*Mr. David C. Greer* and *Mr. Joseph P. Buchanan,* for Albert Lee Scott, Jr.

*Mr. Lee C. Falke,* prosecuting attorney, and *Mr. Gary W. Crim,* for the state of Ohio.

WILLIAM B. BROWN, J. Appellant Scott herein challenges the Court of Appeals' affirmance of the kidnapping and extortion convictions, and its reversal and remand of the aggravated murder conviction. The state has separately appealed this reversal and remand. We consolidate these appeals and discuss appellant's objections first.

## I.

Appellant contends, in his first proposition of law, that he is entitled to a discharge due to the state's failure to comply with the speedy trial provisions, R. C. 2945.71 *et seq.* As herein applied, the speedy trial provisions effectively require that a felon incarcerated on a pending charge must be discharged upon his motion if not brought to trial within 90 days of arrest, unless the period of delay in excess of 90 days can be explained in terms of the excusing conditions included in R. C. 2945.72.[5] Appellant, in effect, contends (1) that the

---

[5] In pertinent part, R. C. 2945.71 provides:

"(C) A person against whom a charge of felony is pending:

"* * *

"(2) Shall be brought to trial within two hundred seventy days after his arrest;

only explanation for a 49-day delay between July 5, 1976, and the commencement of trial, August 23, 1976, is "convenience to the court or-to the prosecution"; (2) that such convenience is not a condition included in R. C. 2945.72; and (3) that this 49-day delay when added to an earlier 65-day delay as to which there is no dispute impermissibly results in a period of unexcused pre-trial incarceration longer than 90 days. Hence, appellant concludes that he is entitled to a discharge.

Appellant's argument fails because the 49-day delay can be explained in terms of the excusing conditions included in R. C. 2945.72. From the outset, all parties assumed that Moore and appellant would have separate and sequential trials, with Moore's trial occurring first. Appellant in fact rejected an offer to be jointly tried. Sequential trials were agreed to and planned in recognition of the problems that would be encountered in securing two courtrooms and judges in the same location, and in transporting and allocating numerous common witnesses and exhibits between the courtrooms. Moore's trial took place from July 5 to August 9. Appellant made pre-trial motions prior to August 9, which were ruled on by the trial court on August 20. He was ordered to give discovery on August 16, and his trial commenced on August 23. We thus determine the delay from July 5 to August 9 to be a reasonable continuance granted other than upon appellant's own motion. R. C. 2945.72(H). Alternatively, since appellant refused an offer to be tried jointly, we

---

"(D) For the purpose of computing time * * *, each day during which the accused is held in jail in lieu of bail on the pending charge shall be counted as three days."

In pertinent part, R. C. 2945.73 provides:

"(B) Upon motion made at or prior to the commencement of trial, a person charged with an offense shall be discharged if he is not brought to trial within the time required by sections 2945.71 or 2945.72 of the Revised Code."

In pertinent part, R. C. 2945.72 provides:

"The time within which an accused must be brought to trial * * * may be extended only by the following:

"* * *

"(E) Any period of delay necessitated by reason of a plea in bar or abatement, motion, proceeding or action made or instituted by the accused;

"* * *

"(H) The period of any continuance granted on accused's own motion, and the period of any reasonable continuance granted other than upon the accused's own motion."

determine this same delay to be necessitated by reason of a motion or action of appellant. R. C. 2945.72(E). We also determine the delay from August 9 to the commencement of appellant's trial, August 23, to be a delay necessitated by reason of appellant's own pretrial motions. R. C. 2945.72(E). Therefore, pursuant to R. C. 2945.72, this 49-day delay is not to be counted against the 90-day limitation, and appellant is not entitled to a discharge.

## II.

Appellant, in his eighth proposition of law, argues that certain incriminating statements made by him to F.B.I. agents after he had been taken to the F.B.I. office in Dayton were improperly admitted because his waiver of rights was involuntary.

F.B.I. agents testified (1) that an agent read appellant his *Miranda* rights, and that appellant read the bureau's "Advice of Rights" form; (2) that appellant acknowledged that he understood his rights and, though he refused to sign a waiver form, he agreed to answer questions; and (3) that appellant never requested counsel. Appellant took issue with the above account, testifying that his requests for counsel were denied.

The record supports the trial court's determination that the statements were made after appellant had knowingly and voluntarily waived his *Miranda* rights. Sitting as trier of fact at the suppression hearing, the trial court resolved the above conflict in testimony by reasonably choosing to adopt the agents' account. See *State* v. *DeHass* (1967), 10 Ohio St. 2d 230. Moreover, appellant's refusal to sign a waiver form is not conclusive that his waiver was involuntary. Faced with a similar refusal, the United States Supreme Court recently held that "[a]n express written or oral statement of waiver of the right to remain silent or of the right to counsel***is not inevitably either necessary or sufficient to establish waiver. The question is not one of form, but rather whether the defendant in fact knowingly and voluntarily waived the rights delineated in the *Miranda* case." *North Carolina* v. *Butler* (1979), 60 L. Ed. 2d 286, 292. Thus, the trial court did not err in admitting the statements.

## III.

In his seventh proposition of law, appellant argues that both the charge of aiding and abetting Emoff's murder and the evidentiary use of certain incriminating information were proscribed by a plea bargain reached shortly after the arrival of appellant's attorneys. Contrary to the state's contention and to the finding of the trial court, appellant asserts that the plea bargain was not conditioned upon his passing a later polygraph examination supporting his truthfulness as to his involvement in Emoff's kidnappping and as to his then present knowledge of Emoff's whereabouts.

The record supports the trial court's interpretation of the plea bargain. Law enforcement officials and appellant's attorneys, who were not trial counsel, testified at the suppression hearing that appellant was aware of and agreed to the conditional nature of the plea bargain, and the trial court reasonably so found. See *State* v. *DeHass, supra.* Thus, appellant's argument is without merit.

## IV.

Appellant, in his fifth proposition of law, challenges a warrantless search of appellant's automobile based solely on his wife's signing a consent to search form ánd her surrendering the keys to law enforcement officials. Appellant argues that the search was illegal because he was the registered owner of the automobile and never delegated to his wife the authority to consent to a warrantless search. In support, appellant cites *State* v. *Bernius* (1964), 177 Ohio St. 155, which held that a search of an automobile based solely on the consent of a casual borrower is unreasonable as against the owner. The state counters that appellant's wife could *herself* authorize the search since, as appellant admitted, she had the right to use and control the vehicle. For this proposition, the state relies on *State* v. *McCarthy* (1971), 26 Ohio St. 2d 87, which held that the consent of a wife to search a married couple's common home is reasonable as against her husband.

We determine *State* v. *McCarthy* controlling and hold that the search was valid. Based on her rights of common access, control and use of the automobile, appellant's wife

*herself* could authorize a search thereof valid as against appellant. *State* v. *Bernius* is not on point because appellant's wife was neither a casual borrower, nor were her rights to use or control the automobile circumscribed in any significant way. See *United States* v. *Matlock* (1974), 415 U. S. 164; *Roberts* v. *United States* (C.A. 8, 1964), 332 F. 2d 892.

## V.

In his second proposition of law, appellant complains that the trial court committed reversible error by refusing to admit, on the issue of credibility, a certified copy of a nine-year old judicial disposition finding a state witness to be a statutory psychopathic offender.[6]

Initially, the trial court gave appellant the option, which was not exercised, of introducing expert testimony showing the connection between psychopathic offender status and credibility. Absent this expert testimony, the trial court determined that it would be unfair to admit the finding because its entry was nine years old, and because there was no showing that the witness would still qualify as a psychopathic offender, as evidenced by his release from a state hospital, and by his current incarceration, instead of hospitalization.

The trial court did not abuse its discretion in refusing to admit the certified copy of the finding. Given the broadness of the statutory definition, the finding's relevancy on the issue of the witness' sensory incapacity was tenuous. Moreover, the statutory classification would have impeached the witness' general moral character, rather than impeaching, more narrowly, his reputation for *truth and veracity*. *Craig* v. *State* (1854), 5 Ohio St. 605. As such, the trial court would have been within its discretion if it had unconditionally refused to admit the finding. *A fortiori,* the trial

---

[6] R. C. 2947.24(B) provides:

" 'Psychopathic offender' means any person who is adjudged to have a psychopathic personality, who exhibits criminal tendencies, and who by reason thereof is a menace to the public. Psychopathic personality is evidenced by such traits or characteristics inconsistent with the age of such person, as emotional immaturity and instability, impulsive, irresponsive, reckless, and unruly acts, excessively self-centered attitudes, deficient powers of self-discipline, lack of normal capacity to learn from experience, or marked deficiency of moral sense or control."

court did not abuse its discretion by conditioning the finding's admissibility on the presentation of the above expert testimony. Finally, even if the judicial finding were otherwise admissible, the trial court could have reasonably concluded that at the time of testimony the nine-year old finding was too remote to be relevant. *Radke* v. *State* (1923), 107 Ohio St. 399. See McCormick on Evidence (2 Ed. 1972), at page 92.

## VI.

Appellant's sixth proposition of law is that the trial court erred prejudicially in refusing to grant appellant's motion for a new trial based on comments made by a state official in the presence of certain unsequestered jurors concerning the criminal justice system.

The statements were made during a trial recess and were brought to the attention of the trial court by a juror. The trial court immediately informed counsel and conducted a *voir dire* of each juror. Most jurors had no recollection of the comments. With one exception, the few who did recollect them said the comments were unrelated to appellant's trial and would have no influence upon them. The one juror who said that the comments were related to appellant's trial could describe neither their general subject matter nor their details, and further admitted merely overhearing them. At the close of *voir dire,* the trial court overruled appellant's motion for a new trial on the ground that those jurors who heard the comments were not influenced by them. Later, upon interrogation by the court, the commenting state official testified that his comments were made to one juror, that they were confined to general comments about probation and parole, and that they were unrelated to appellant's trial. At the end of this testimony, the trial court again overruled appellant's renewed motion.

The trial court did not abuse its discretion in overruling appellant's motion for a new trial. Since the trial court's separate *voir dire* of each juror revealed the state official's comments to be unrelated to appellant's trial, no issue of presumptive prejudice was present. See *Remmer* v. *United States* (1954), 347 U. S. 227. Moreover, the trial court's finding of no actual prejudice was supported by the jurors' in-

dividual assertions on *voir dire* that they would not be influenced by the comments. Thus, the trial court properly overruled appellant's new trial motion.

## VII.

Appellant, in his third proposition of law, argues that the Court of Appeals should have unconditionally reversed and not remanded appellant's aggravated murder conviction because the record did not include an evidentiary basis which would support a jury finding that appellant purposely aided and abetted Emoff's murder.

The complicity statute, R. C. 2923.03, in relevant part, reads:

"(A) No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following:

"* * *

"(2) Aid or abet another in committing the offense."

The aggravated murder statute, R. C. 2903.01, in relevant part, reads:

"(B) No person shall purposely cause the death of another while committing or attempting to commit* * * kidnapping* * *."

Based upon these sections, appellant argues that to convict him for aggravated murder the state needed to prove his purpose to cause death, and that such purpose could not legally be inferred from the evidence presented.

Appellant's argument is without merit. A jury can infer an aider and abettor's purpose to kill where the facts show that the participants in a felony entered into a common design and *either* the aider or abettor knew that an inherently dangerous instrumentality was to be employed to accomplish the felony *or* the felony and the manner of its accomplishment would be reasonably likely to produce death. *State* v. *Lockett* (1976), 49 Ohio St. 2d 48, paragraphs three and four of the syllabus. Since the state presented evidence showing appellant's complicity, his awareness that handguns were to be employed to accomplish the kidnapping, and also that the kidnapping was reasonably likely to produce Emoff's death, a sufficient evidentiary basis was present. Accord, *State* v. *Clark* (1978), 55 Ohio St. 2d 257.

## VIII.

In its separate appeal the state has challenged the Court of Appeals' reversal of the aggravated murder conviction. The Court of Appeals reversed this conviction solely because it determined that the effect of the trial court's affirmative answer to a jury question "was to remove the question from the jury of whether the victim's death was reasonably foreseeable as a natural and probable consequence of the kidnapping***[and remanded because]***appellant was entitled to whatever benefit such instruction might give him."

The jury presented the trial court with the following question:

"According to the *law* if a defendant is guilty of kidnapping and the victim is never released.alive even though the defendant had no knowledge of nor participation in the murder, by reason of being implicated in the kidnapping is he also guilty of aiding and abetting the murder?"

Over appellant's objection, the trial court answered that "[s]uch a defendant is also guilty of aiding and abetting the murder."

The state argues that the trial court's affirmative answer correctly "instructed the jury as to the legal effect of facts concerning the relationship between the kidnappers and the murder *in this case***.*" We disagree. The trial court's affirmative answer would have been correct only if Ohio adhered to the strict felony murder rule. That is, appellant would be "guilty of aiding and abetting the murder***[solely] by reason of being implicated in the kidnapping***" only if the *mens rea* requirement for murder could be supplied by the mental element of the underlying kidnapping.

Ohio, however, does not follow the strict felony murder rule. "[P]urpose to kill is an essential element of the crime of first degree murder in this state." *State* v. *Lockett, supra,* at pages 58-59; *Robbins* v. *State* (1857), 8 Ohio St. 131; *State* v. *Farmer* (1951), 156 Ohio St. 214. Accordingly, paragraphs three and four of the syllabus in *Lockett* describe the factual basis from which a jury could *infer* appellant's purpose to kill, as required by the aggravated murder statute. See Part VII, *supra.* See, also, *State* v. *Johnson* (1978), 56 Ohio St. 2d 35, 38. In effect, the trial court's affirmative answer to the jury question improperly relieved the state of its duty to prove ap-

pellant's purpose to kill beyond a reasonable doubt. See *In re Winship* (1970), 397 U. S. 358, 364. The state's appeal is therefore without merit.

## IX.

Appellant's fourth proposition of law argues that it was prejudicial error for the trial court to refuse to instruct the jury on the lesser-included offense of involuntary manslaughter. The Court of Appeals sustained this refusal, determining that "appellant's defense***[did] not furnish an evidentiary basis for an instruction on***involuntary manslaughter."

The Court of Appeals erred in sustaining the trial court's refusal to instruct the jury on involuntary manslaughter. Involuntary manslaughter would be an offense for which the jury could convict appellant if appellant convinced the jury that he lacked the purpose to kill required by the aggravated murder statute.

R. C. 2903.04(A) defines involuntary manslaughter as follows:

"No person shall cause the death of another as a proximate result of the offender's committing or attempting to commit a felony."

Appellant was convicted of kidnapping, a felony. If on remand, the jury were to find that appellant lacked the purpose to kill necessary to sustain a conviction for aiding and abetting the aggravated murder, an involuntary manslaughter conviction would be possible since the jury could conclude that the murder was nevertheless a "proximate result of [appellant's] committing***a felony." See *State* v. *Nolton* (1969), 19 Ohio St. 2d 133, 135; *Cf. State* v. *Hill* (1967), 12 Ohio St. 2d 88, 91-92, and paragraph four of the syllabus.

Accordingly, to this limited extent, the judgment of the Court of Appeals is reversed. On remand, the trial court must additionally instruct the jury on involuntary manslaughter. In all other respects, the judgment of the Court of Appeals is affirmed.

*Judgment affirmed in part*
*and reversed in part.*

CELEBREZZE, C. J., HERBERT, P. BROWN, SWEENEY, LOCHER and HOLMES, JJ., concur.