812 F.2d 1406
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Ronald Lee GILLIAM, Petitioner-Appellant,
v.
Ronald MARSHALL, Respondent-Appellee.
 No. 85-3503.
 United States Court of Appeals, Sixth Circuit.
 Jan. 29, 1987.
 
 Before NELSON and RYAN, Circuit Judges, and ENSLEN, District Judge.*
 DAVID A. NELSON, Circuit Judge.
 
 
 1
 The district court denied Ronald Lee Gilliam's petition for a writ of habeas corpus, which Gilliam sought on the grounds that juror misconduct and prosecutorial misconduct rendered his conviction in state criminal proceedings constitutionally defective. We agree with the district court that the writ should have been denied.
 
 
 2
 * The underlying facts were set forth in the opinion of the Ohio Court of Appeals:
 
 
 3
 "On March 8, 1978 in Montgomery County, Ohio, the defendant was a patron of the Brass Tap Bar. While the defendant was present an intoxicated young lady began to disrobe but her performance was interrupted by one of the co-owners of the bar who requested that she and her two male companions leave the bar. They left and the defendant objected to the bar owner's interrupting the show. Words were exchanged between the defendant and the co-owner of the bar, Lev Kuchersky. The defendant broke a glass to display his unhappiness. Mr. Kuchersky left the bar, went to seek advice or help several blocks away at Joey's Bar where he met Larry Schear. Mr. Schear and Mr. Kuchersky sought the advice of Bill Stepp, but being unsuccessful in contacting him, called Richard Schear.
 
 
 4
 "While Mr. Kuchersky was absent, the defendant received a telephone call from Bill Stepp which infuriated the defendant and he left the bar telling the barmaid he would be back. He returned armed with a shotgun. He was accompanied by several friends. All took their seats at the bar. Larry Schear returned to the bar with Mr. Kuchersky. Mr. Richard Schear and Pat Barber entered the bar and Richard Schear and Mr. Gilliam were soon engaged in a fight. When it appeared that Richard Schear was being beaten by Mr. Gilliam and his cohorts, Larry Schear took a gun from his belt and fired two shots in an attempt to stop the beating. There is some dispute as to whether both shots were to warn or one of the shots was fired at the defendant. Thereafter, the number of guns, the number of shots and the activity of the various persons in the bar is a matter of dispute but the result was the death of Larry Schear by gunshot wound and the wounding of Pat Barber who was in the service area behind the horseshoe shaped bar."
 
 
 5
 State v. Gilliam, No. 6187 (Ct.App. Montgomery County, Ohio Feb. 28, 1980).
 
 
 6
 Gilliam was convicted of one count of murder and one count of attempted murder. Appeals to the Ohio Court of Appeals and the Ohio Supreme Court were unsuccessful, and Gilliam filed a petition for a writ of habeas corpus in federal district court. His first petition was dismissed for failure to exhaust all claims, but a subsequent petition deleted the unexhausted claim. The district court adopted a magistrate's report recommending denial of the second petition. Gilliam appeals the denial of the writ.
 
 II
 
 7
 Gilliam claims that extra-judicial knowledge possessed by one of the jurors rendered his trial unfair. At the time of jury selection the juror, a Mr. Schulte, had no reason to believe that he had any relationship with or knowledge of Gilliam. Several days after the trial began, however, it came to Schulte's attention that a co-worker was Gilliam's girlfriend. Over the course of his employment Schulte had learned quite a lot about the relationship between this co-worker and the man he now realized was the defendant, Gilliam. Schulte did not think this knowledge would affect his ability to be an impartial juror, and he did not mention it to his fellow jurors or report it to the court. Shortly after the conclusion of the trial it was revealed in a local newspaper that Schulte had been a co-worker of the girlfriend. Based on this revelation, the defense moved for a new trial.
 
 
 8
 The state trial judge held an evidentiary hearing at which Schulte testified that he knew the co-worker's boyfriend was a married man, and Schulte said that he disapproved of such extra-marital activity. Schulte testified that he also knew the boyfriend had slapped the woman around, conduct of which Schulte likewise disapproved. When asked why he had not informed the court of his discovery that defendant Gilliam was the boyfriend in question, Schulte answered that he felt he should not come forward because of the court's instructions to disregard any information not in evidence. Schulte further testified that he had not allowed his independent knowledge of the defendant to influence him, and he claimed that he based his verdict wholly on the evidence presented at trial.
 
 
 9
 The state trial court found the testimony of Schulte to be credible and concluded that his verdict was based solely on the facts and law presented at trial and was not influenced by the knowledge acquired outside the courtroom. Soon thereafter, Gilliam was sentenced to a term of fifteen years to life for the murder of Larry Schear and a term of seven to twenty-five years for the attempted murder of Pat Barber, the sentences to be served concurrently.
 
 III
 
 10
 The question of whether or not a new trial should be granted because of alleged juror misconduct, bias, or exposure to outside influences is a matter committed to the discretion of the trial court under both federal and Ohio law. See United States v. Khoury, 539 F.2d 441, 443 (5th Cir.1976) cert. denied, 429 U.S. 1040 (1977) ("in all jury misconduct cases ... we have ... recognized that the granting of a mistrial is largely within the discretion of the trial judge"); State v. Scott, 61 Ohio St.2d 155, 400 N.E.2d 375, 382 (1980) (trial court did not abuse its discretion in overruling a motion for a new trial where comments were made by a state official in the presence of unsequestered jurors). See also United States v. Pennell, 737 F.2d 521, 533 (6th Cir.1984), cert. denied, 83 L.Ed.2d 921 (1985) ("a district court's decision not to grant a mistrial after investigating allegations of unauthorized contact with jurors should be reviewed only for abuse of discretion"). Moreover, the state trial court held an evidentiary hearing in this case and made a factual determination that Schulte based his decision solely on the facts and law presented to him at trial. On habeas review, the federal courts must give appropriate weight to the factual determinations of the state court; subject to certain exceptions, such determinations are entitled to a statutory presumption of correctness. 28 U.S.C. Sec. 2254(d); Loveday v. Davis, 697 F.2d 135 (6th Cir.1983).
 
 
 11
 Gilliam argues that he should be given a new trial under the rule of McCoy v. Goldston, 652 F.2d 654 (6th Cir.1981). McCoy was not a habeas corpus case, but a 42 U.S.C. Sec. 1983 action in which the plaintiffs sought to hold a police department and some of its officers liable for false arrest, assault and battery, and other torts. After a jury verdict had been rendered for the defendants, plaintiffs' counsel discovered that a juror had been unresponsive to a direct question on voir dire regarding personal connections to law enforcement officers; the juror had failed to inform the court that her son was in training to become a parole officer. The district court refused to grant an evidentiary hearing or a new trial.
 
 
 12
 This court held that because the plaintiffs had made a prima facie showing of interference with the intelligent exercise of their right of peremptory challenge, the district court abused its discretion in failing to hold an evidentiary hearing on the possible bias of the juror. Once such a hearing had been held, this court continued, the trial judge would be required to grant a new trial should he determine, on the basis of the testimony at the evidentiary hearing, that the undisclosed information would have resulted in the juror's disqualification for cause.
 
 
 13
 Although this court's decision in McCoy was informed by considerations of constitutional law, it was not necessary to decide any constitutional issue in that case. The federal courts could not grant habeas corpus relief to Mr. Gilliam, however, absent a determination that the state authorities are holding him in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. Sec. 2254(a). McCoy is thus instructive, but not controlling. Moreover, the narrow holding in McCoy was simply that the federal court in which the case had been tried abused its discretion in failing to conduct an evidentiary hearing when the possibility of juror misconduct came to light. No such abuse of discretion was possible here, of course, because the state trial court did hold an evidentiary hearing. Unlike the court in McCoy, we are required to decide whether the decision reached by the trial court on the basis of the evidentiary hearing was constitutionally impermissible. Case law subsequent to McCoy confirms our belief that it was not.
 
 
 14
 Less than a year after McCoy was decided, the Supreme Court considered a habeas case where a juror in a state court trial for murder had filed a job application with the prosecutor's office while the murder case was in progress. Smith v. Phillips, 455 U.S. 209 (1982). After a guilty verdict was rendered, the District Attorney learned about what had happened and informed defense counsel and the state trial court. The trial judge held an evidentiary hearing and determined that although the juror's job application was an "indiscretion," his ability to be impartial had not been impaired. The Supreme Court held habeas relief unwarranted. Justice Rehnquist, speaking for the Court, rejected the idea that the impartiality of a juror could not be determined by relying on the testimony of that juror, and stated further that
 
 
 15
 "due process does not require a new trial every time a juror has been placed in a potentially compromising situation. Were that the rule, few trials would be constitutionally acceptable. The safeguards of juror impartiality, such as voir dire and protective instructions from the trial judge, are not infallible; it is virtually impossible to shield jurors from every contact or influence that might theoretically affect their vote. Due process means a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen. Such determinations may properly be made at a hearing like that ordered in Remmer [v. United States 347 U.S. 227, 74 S.Ct. 450, 98 L.Ed. 654 (1954) ] and held in this case."
 
 
 16
 Smith v. Phillips, 455 U.S. at 217.
 
 
 17
 In United States v. Pennell, 737 F.2d 521 (6th Cir.1984), cert. denied, 83 L.Ed.2d 921 (1985), Judge Contie, writing for this court, observed that Smith v. Phillips had "indeed altered the law concerning unauthorized communications with jurors." Id. at 532. Previous Sixth Circuit cases such as United States v. Ferguson, 486 F.2d 968 (6th Cir.1973), and Stone v. United States, 113 F.2d 70 (6th Cir.1940), had held that prejudice was to be presumed anytime a juror's impartiality was compromised. Moreover, the two opinions "clearly exhibited a distrust of juror assurances of impartiality." 737 F.2d at 532. Pennell, however, concluded that "[i]n light of [Smith v.] Phillips, the burden of proof rests upon a defendant to demonstrate that unauthorized communications with jurors resulted in actual juror partiality. Prejudice is not to be presumed." Id. at 532. Noting that under Smith v. Phillips juror testimony should not be viewed as inherently suspect, this court held "that if a district court views juror assurances of continued impartiality to be credible, the court may rely upon such assurances in deciding whether a defendant has satisfied the burden of proving actual prejudice." Pennell, 737 F.2d at 533. In McDonough Power Equipment v. Greenwood, 464 U.S. 548 (1984), the Supreme Court reached a similar result in the context of a civil jury case.
 
 
 18
 In United States v. Howard, 752 F.2d 220 (6th Cir.1985), cert. denied, 89 L.Ed.2d 325, reh'g denied, 89 L.Ed.2d 907 (1986), this court considered a federal criminal case where a juror had withheld the information that her brother-in-law was a police officer. The defendants argued that bias must be presumed under McCoy because the juror deliberately concealed information. Judge Swygert, sitting by designation and speaking for this court, said that it was not necessary to determine if McCoy has been superseded by Smith v. Phillips and McDonough Power Equipment, because "even under McCoy, implied bias [was] not warranted...." Howard, 752 F.2d at 224. Although McCoy held that an evidentiary hearing must be conducted when a prima facie case of deliberate concealment has been established, Judge Swygert pointed out that McCoy did not automatically mandate a new trial. The district court held an evidentiary hearing in Howard, just as the state trial court did here, and determined that the juror had made an honest mistake. This court found no error in that determination, and refused to reverse the conviction.
 
 
 19
 In the case at bar, where the factual determinations made by a state trial court carry a statutory presumption of correctness, it seems even clearer that no new trial is required. According to the state trial judge in this case, Juror Schulte did not bring his realization of extra-judicial personal knowledge to the court's attention because he felt it would be improper to do so in light of the "court's admonition and instruction to disregard any information from whatever source except that which was in evidence...." This is precisely the sort of good faith, yet mistaken, belief held not to require a new trial in cases such as Howard and McDonough Power Equipment. Here there was no deliberate concealment of the kind that might necessitate a new trial under McCoy.
 
 
 20
 McCoy also suggests that a new trial is required where a juror would have been disqualified for cause had the information been known to the court when the jury was being impaneled. If that test is applicable here, we think it has been met. Ohio Revised Code Sec. 2945.25 sets forth the reasons for which a prospective juror can be challenged for cause in criminal cases. Only two might have been pertinent here. The first is set forth in subsection B:
 
 
 21
 "That [the prospective juror] is possessed of a state of mind evincing enmity or bias toward the defendant or the state; but no person summoned as a juror shall be disqualified by reason of a previously formed or expressed opinion with reference to the guilt or innocence of the accused, if the court is satisfied, from examination of the juror or from other evidence, that he will render an impartial verdict according to the law and the evidence submitted to the jury at the trial[.]"
 
 
 22
 O.R.C. Sec. 2945.25(B). The post-trial examination of Mr. Schulte satisfied the trial court that the necessary "enmity or bias" was not present.
 
 
 23
 Subsection O is a catchall provision, permitting challenge for cause when it appears "[t]hat [the prospective juror] otherwise is unsuitable for any other cause to serve as a juror." O.R.C. Sec. 2945.25(O). This language has not often been construed by the Ohio courts, but under the principle noscitur a sociis it may be presumed to cover unenumerated causes comparable, in terms of potential prejudice, to the enumerated causes. We do not believe that the offhand knowledge possessed by Mr. Schulte rises to that dignity. Our conclusion is buttressed by the failure of the state courts themselves to find any prejudice to Gilliam. See also United States v. Mitchell, 556 F.2d 371, 378-79 (6th Cir.), cert. denied, 434 U.S. 925 (1977).
 
 IV
 
 24
 Gilliam also contends that a new trial should be granted because of prosecutorial misconduct. At a point in the trial before the defendant's character had been put in issue, the prosecutor, in front of the jury, asked a testifying police officer whether he knew the defendant "by reputation." The officer answered affirmatively. Defense counsel objected, and the judge stated at sidebar that the question was "an absolute violation of everything known to God and man. You can't ask that question; it is grounds for a mistrial. If you want one, I will give it to you." Defense counsel was unwilling to settle for a mistrial, and demanded a dismissal with prejudice instead. The trial court declined to dismiss with prejudice, and the Ohio Court of Appeals refused to reverse the ensuing conviction. That decision seems sound, the trial court having offered to cure any prejudice to Gilliam by granting a mistrial. Moreover, we do not believe that any error committed by the prosecutor was of constitutional magnitude.
 
 
 25
 Gilliam argues that a mistrial should have been granted sua sponte, the failure of defense counsel to ask for one notwithstanding. But this was a matter within the discretion of the trial court. Arizona v. Washington, 434 U.S. 497, 509-10, 98 S.Ct. 824, 54 L.Ed.2d 717, 730-31 (1978); Budoff v. Holiday Inns, Inc., 732 F.2d 1523, 1525 (6th Cir.1984). Gilliam relies on cases stating that the Double Jeopardy Clause prohibits "prosecutorial tactics intended to provoke a mistrial, thereby subjecting him to multiple prosecutions...." But the record indicates that the prosecutor thought Gilliam's reputation was relevant to the issue of self-defense. Whatever the merits of the prosecutor's view, such a belief negates malicious intent.
 
 
 26
 Gilliam also takes issue with comments the prosecutor made during closing argument about Gilliam's prior criminal convictions. Gilliam testified at trial, however, and use of the prior convictions was permissible to attack his credibility.
 
 
 27
 The judgment denying habeas corpus relief is AFFIRMED.
 
 
 
 *
 The Honorable Richard A. Enslen sitting by designation from the Western District of Michigan