923 F.2d 854
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
James L. BELL, Petitioner-Appellee,
v.
Terry L. MORRIS, Respondent-Appellant.
 No. 90-3551.
 United States Court of Appeals, Sixth Circuit.
 Jan. 24, 1991.
 
 Before KENNEDY and MILBURN, Circuit Judges, and ENGEL, Senior Circuit Judge.
 KENNEDY, Circuit Judge.
 
 
 1
 In May 1990, the District Court granted the petitioner, James L. Bell, writ of habeas corpus. Respondent, Terry L. Morris, appeals, raising the issue of whether, given the procedural posture of this case, the District Court properly reached the merits of the petition. Although the respondent does not focus on the merits of the petitioner's claims, they must be examined in determining whether there is a procedural bar. After an examination of the record and issues before us, this Court finds that the jury was instructed in violation of Mullaney v. Wilbur, 421 U.S. 684 (1975) and the requirements of Ohio law as construed in Clark v. Jago, 676 F.2d 1099 (6th Cir.1982), cert. denied, 466 U.S. 977 (1984). The District Court's grant of habeas corpus is, therefore, affirmed.
 
 
 2
 In January 1979, petitioner was indicted on two counts of aiding and abetting aggravated murder, in violation of Ohio Rev.Code Ann. Sec. 2903.01(A) (Anderson 1987). He was convicted of both charges. On January 24, 1979, the petitioner, along with two companions, David Gambill and Terry Reeder, went to the house of the two victims, Donna Kennard and Deborah Coleman. Petitioner had with him a gun belonging to Gambill. Petitioner had accompanied Gambill when Gambill purchased the gun on January 17, and the bullets on January 23, the day before the killing. Prior to that evening, the petitioner and Gambill had argued with the victims on several occasions. Most recently they had argued over money to pay for damage the victims had caused to the petitioner's car. There was evidence that the petitioner had issued a veiled threat against the victims within the last month. After spending the evening of January 24 at a bar drinking, Gambill, Reeder and the petitioner went to the victims' home. Reeder testified that they went there on petitioner's suggestion, so that he could get money for the damage to his car, and that upon arriving at the victims' home the petitioner pulled the phone from the wall. An argument began, and the petitioner removed the gun from his belt and pointed it at one of the victims. Gambill demanded the gun from the petitioner, who gave it to him. Gambill then shot and killed the victims. Gambill and the petitioner were later arrested and tried separately for the murders.
 
 
 3
 The petitioner appealed his conviction to the Ohio Court of Appeals, claiming that: (1) there was insufficient proof of conspiracy, complicity, or aiding and abetting; (2) the trial court erred in admitting into evidence certain photographs and physical exhibits; (3) the trial court erred in refusing to grant petitioner's motion for change of venue; and (4) the trial court erred in refusing to grant the petitioner a new trial because of evidence discovered after the trial. The Ohio Court of Appeals overruled the first three assignments of error, and refused to reach the fourth on the merits because notice of appeal had not been timely filed with respect to that claim.
 
 
 4
 The petitioner then sought to appeal his conviction to the Ohio Supreme Court in forma pauperis, and filed a brief in support of reversal of his conviction. Petitioner raised the same issues to the Ohio Supreme Court that had been raised to the Ohio Court of Appeals, except that he added a claim of ineffective assistance of appellate counsel in violation of the Constitution. He stated in his pro se brief that appellate counsel was ineffective in failing to raise on appeal trial counsel's failure to object to the jury instructions. A supplemental brief was later filed by counsel for the petitioner. Counsel's brief, however, raised only the issues of whether there was sufficient evidence to convict petitioner and whether certain evidence had been improperly admitted. The Ohio Supreme Court denied the petitioner's motion for leave to appeal. The petitioner's motion for a new trial was denied, and petitioner never sought post-conviction relief pursuant to Ohio Rev.Code Ann. Sec. 2953.21. Bell then petitioned in federal district court for habeas corpus. Initially, the magistrate recommended that the petition be dismissed because it contained both exhausted and unexhausted claims and therefore was procedurally barred. The District Court rejected that recommendation and remanded the petition for a recommendation on the merits. The magistrate's subsequent recommendation, adopted by the District Court, was to grant the petition on the basis that the trial court's jury instructions were in violation of Sandstrom v. Montana, 442 U.S. 510 (1979). This appeal follows.
 
 I. Exhaustion of state remedies
 
 5
 Under 28 U.S.C. Sec. 2254, a writ of habeas corpus can only be granted if the petitioner has exhausted the available state remedies. The first line of inquiry, therefore, must be to determine whether the petitioner has exhausted his state remedies. Petitioner appealed his conviction to the Ohio Court of Appeals, and sought an appeal to the Ohio Supreme Court. He has, therefore, exhausted his direct state appeals. Ohio does, however, have a post-conviction proceeding through which the petitioner could raise collateral issues in a challenge to his conviction. See Ohio Rev.Code Ann. Sec. 2953.21. The petitioner failed to bring a post-conviction challenge but would be barred from raising any issues that he could have raised in his direct appeal, including the issue of whether the jury instructions violated due process. Res judicata, therefore, would prevent consideration of that issue. See Ohio v. Cole, 2 Ohio St.3d 112 (1982).[1]
 
 
 6
 Having concluded that the petitioner has no state remedy left at his disposal with respect to the instructions or sufficiency of evidence, we must next determine whether he waived his right to challenge his conviction in federal court by failing to raise in state court the issues upon which he bases his petition. In Leroy v. Marshall, 757 F.2d 94 (6th Cir.), cert. denied, 474 U.S. 831 (1985), this Court held that a petitioner "must be held to have waived his right to challenge his convictions" upon those grounds that he failed to assert in the state appellate courts unless he can show " 'cause and prejudice' which would provide a legal justification for the federal court to look beyond the procedural bar...." Id. at 97. Because the petitioner did not specifically raise the issue in the state proceedings of whether the jury instructions violated Sandstrom, 442 U.S. at 510,[2] petitioner must show cause for that procedural default before a federal habeas court can address the merits of his claims.
 
 
 7
 The petitioner's claim here is that the instructions given by the state trial court were in violation of Sandstrom v. Montana. The Sandstrom issue, however, was never raised in Ohio state court. That failure to raise the issue in state court results in a procedural default because under federal habeas procedure a petitioner must have given the state court an opportunity to address an issue before a federal court can consider it. In order to overcome that procedural default the petitioner must establish cause and prejudice. In Murray v. Carrier, 477 U.S. 478, 488 (1986), the Supreme Court held that the cause required to overcome a procedural default can be established if the petitioner can prove that ineffective assistance of counsel in violation of Strickland v. Washington, 466 U.S. 668 (1984), caused the default. The petitioner claims that ineffective assistance of appellate counsel caused him to fail to raise the Sandstrom issue in state court. "[T]he cause and prejudice test applies to default on appeal as to those at trial." Murray, 477 U.S. at 491. Murray requires, however, that "a claim of ineffective assistance be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default." Id. at 489. Petitioner did raise the issue of ineffective assistance of appellate counsel in his pro se brief seeking review by the Ohio Supreme Court. Although he did not claim in his pro se brief that appellate counsel was ineffective in failing to raise the Sandstrom issue itself, such specificity is not necessary. Petitioner raised the issue of ineffective assistance of counsel to the Ohio Supreme Court, giving the state court the opportunity to rule on that issue. Petitioner, therefore, has shown cause for his failure to raise the Sandstrom issue in state court. If petitioner's appellate counsel had been effective, the Sandstrom issue would have been raised in his direct appeal in state court. It is not necessary that the state court have actually addressed the issue which the petitioner claims as cause, but only that the state court have had an opportunity to do so.
 
 
 8
 Having established cause is not, however, the end of the procedural analysis in this habeas petition. In addition to showing cause, the petitioner must also show prejudice. Petitioner can only establish prejudice if there was indeed a Sandstrom violation. We must therefore proceed with an analysis of the substance of the habeas petition.
 
 II. Sandstrom violation
 
 9
 The magistrate concluded that the trial court had violated Sandstrom, 442 U.S. at 510, by instructing the jury that:
 
 
 10
 In the absence of a conspiracty [sic], one may not be held as a principal, if he is merely present during the commission of a crime where he has not procured, encouraged or participated in such crime. ... However, if you find that the Defendant and David L. Gambill entered into a conspiracy or had a common purpose or design to commit an unlawful act, such as attempting to obtain money by means of threats or violence, a different rule applies. The aider and abettor is criminally responsible for any act done in furtherance of the common criminal enterprise, whether intended by him or not, if such act might have been reasonably contemplated by him as probable or likely to result from an attempt to commit the crime intended; or, as otherwise stated, he is bound by the consequences naturally or probably arising in its furtherance and, in case of death, is guilty of homicide. Each is responsible for everything done by his confederate which follows incidentally in the execution of a common design as one of its probable and natural consequences even though it was not intended as part of the original design or common plan.
 
 
 11
 * * *
 
 
 12
 * * *
 
 
 13
 It must be established in this case that at the time in question there was present in the mind of David L. Gambill a specific intention to kill Donna Jean Kennard and Deborah Renee Coleman.
 
 
 14
 Joint App. at 851-52, 854.
 
 
 15
 The magistrate concluded that these instructions violated Sandstrom because they shifted the burden of proof from the prosecutor to the petitioner by allowing the jury to presume intent from a certain set of facts. According to Sandstrom, the court cannot relieve the state of its burden of proving each element of an offense by instructing the jury that it must presume any element of the crime.
 
 
 16
 Ohio does not have a strict felony murder rule, but instead has instituted a "modified" felony murder rule. The statute under which the petitioner was convicted states that:
 
 
 17
 [i]n no case shall a jury in an aggravated murder case be instructed in such a manner that it may believe that a person who commits or attempts to commit any offense ... is to be conclusively inferred, because he engaged in a common design with others to commit [an] offense by force and violence or because the offense and the manner of its commission would be likely to produce death, to have intended to cause the death of any person who is killed....
 
 
 18
 Ohio Rev.Code Ann. Sec. 2903.01(D) (emphasis added). See also Sec. 2923.03(A)(2). The Ohio Supreme Court addressed this statute in Ohio v. Lockett, 49 Ohio St.2d 48 (1976), rev'd on other grounds, 438 U.S. 586 (1978). The Lockett court held that a person who engages in a common design to commit a crime by force, with the use of a deadly weapon is guilty of a homicide that occurs during the commission of the crime because "a homicide occurring during the commission of the felony is a natural and probable consequence of the common plan which must be presumed to have been intended, and such evidence is sufficient to allow a jury to find a purposeful intent to kill." Lockett, 49 Ohio St.2d at 48-49 (syllabus paragraphs 3, 4).
 
 
 19
 The decision in Lockett was explained further in Ohio v. Scott, 61 Ohio St.2d 155 (1980). In Scott, the Ohio Supreme Court affirmed the Ohio Court of Appeals' reversal of an aggravated murder conviction in which the jury was instructed that if the defendant was involved in a conspiracy to kidnap, he was necessarily guilty of the homicide that resulted from it. Rather, the Ohio Supreme Court stated that,
 
 
 20
 [a] jury can infer an aider and abettor's purpose to kill where the facts show that the participants in a felony entered into a common design and either the aider and abettor knew that an inherently dangerous instrumentality was to be employed to accomplish the felony or the felony and the manner of its accomplishment would be reasonably likely to produce death.
 
 
 21
 Id. at 165 (emphasis in original). Ohio, therefore, does not follow the strict felony murder rule, in that a defendant cannot be convicted of aggravated murder solely because he engaged in a felony that resulted in a murder. Instead, the prosecution must always prove intent, even where the defendant was an aider and abettor. Under Scott and Lockett, however, intent may be found by the jury where the defendant entered into a conspiracy to commit a felony when that felony is committed in such a way that it might result in death. "Lockett describe[d] the factual basis from which a jury could infer appellant's purpose to kill, as required by the aggravated murder statute." Id. at 166 (emphasis in original).
 
 
 22
 The court below relied on this Court's earlier decision in Clark v. Jago, 676 F.2d at 1099, in concluding that there was a Sandstrom violation. The decision in Clark is binding precedent in this Circuit. Clark interpreted Scott to hold that Ohio's modified felony murder rule nonetheless required the prosecution to prove that the aider and abettor had the intent to kill, and found that the Ohio trial court had violated Sandstrom in failing to give an instruction on intent. The defendant in Clark was convicted by a jury following instructions that required that the jury find that the defendant caused the death, that the killing was done while the defendant was committing a felony, and that the killing was purposeful. The jury was further instructed that either the defendant or his accomplice had to have had the intent to kill. The Clark Court held that as a whole those instructions relieved the prosecution of its burden of proving intent. It permitted the jury to find the essential intent element in the accomplice who did the actual killing rather than in the defendant. Although unlike "Sandstrom, this case does not directly involve the use of a presumption as such," the principle of Sandstrom still applies because "[t]he jurors were never told that [the defendant's] culpability, whether established by direct proofs or by the Lockett-Scott inference must be first established before he can be an aider or abetter or an accomplice to aggravated murder." Clark, 676 F.2d at 1104-05.
 
 
 23
 Like Clark, this case does not involve the presumption instruction upon which Sandstrom relies, and therefore Mullaney, 421 U.S. at 684, may better illustrate the constitutional violation that is involved in the case before us. Mullaney, from which Sandstrom follows, involved Maine's practice that while the prosecution had the burden to prove that a defendant was guilty of manslaughter, in order to avoid a conviction and sentence for murder, a defendant in a homicide case had to prove by a preponderance of the evidence that the homicide was committed in the heat of passion. The Mullaney Court held that the Maine practice violated the due process clause because it relieved the prosecution of its burden to prove each element of the crime beyond a reasonable doubt. See also In re Winship, 397 U.S. 358 (1970) (prosecution required to prove beyond a reasonable doubt each element).
 
 
 24
 Following the precedent in Clark, this Court concludes that the jury instructions given at trial were in violation of the due process clause. They failed to make it clear to the jury that it must find that Bell had an intent to kill the victims. Nowhere was the jury told that in order to convict Bell it must find that the prosecution had proved that Bell had an intent to kill, an intent that could be inferred from a conspiracy or his acts in participating in a violent crime likely to result in death. Admittedly the instruction contained a discussion about the law of aiding and abetting and conspiracy. But when the court continued its instructions, the only instruction regarding intent to kill was that the accomplice Gambill have an intent to kill. Although the jury could have inferred from the evidence of Bell's actions and the role he played the night of the killings that he had an intent to kill, the jury was simply never instructed in that they must find intent to kill on the part of Bell. Having failed to do so, the instructions did not require proof of an element of the crime as we determined the elements of Ohio law to be in Clark. Further, before the petitioner may be found guilty of aggravated murder, he must first be found to have been an aider and abettor or a co-conspirator. The trial court did not instruct the jury on the prosecution's duty to establish beyond a reasonable doubt that the petitioner had entered into a conspiracy to commit a felony by means of force or with the use of a dangerous weapon and that it would be reasonably likely that a death would result from that conspiracy. See Scott, 61 Ohio St.2d at 165. The instructions, therefore, relieved the prosecution of its duty to prove each element of the crime beyond a reasonable doubt, in violation of Mullaney v. Wilbur. The District Court's grant of habeas corpus is, therefore, AFFIRMED.
 
 
 
 [1]
 Respondent argues that petitioner must raise all possible claims in state court proceedings before he can seek habeas in federal court. This Court, however, has held that this is not the case. "[T]he mere presence of the unexhausted claim does not require dismissal of the petition." Ewing v. McMackin, 799 F.2d 1143, 1150 n. 12 (6th Cir.1986). Therefore, although a federal court cannot address issues that have not been exhausted in state court, it can address issues that have been exhausted even if there are other issues in the case that have not been exhausted
 
 
 [2]
 The parties have addressed the issue as a Sandstrom violation although it appears to be more accurately categorized as a Mullaney or In re Winship, 397 U.S. 358 (1970) violation. See discussion, infra at section II