OPINION
David A. Brown, defendant-appellant, appeals a judgment of the Franklin County Court of Common Pleas finding him guilty of robbery, in violation of R.C. 2911.02, failure to comply with an order or signal of a police officer, in violation of R.C.2921.331, and possession of criminal tools, in violation of R.C.2923.24.
On December 18, 1998, police responded to a call that two individuals were breaking into cars in a parking lot of an apartment complex on the west side of Columbus, Ohio. Upon arriving at the apartment complex, Officer Lewis Beeler saw two individuals walking in the parking lot, and ordered them to stop. The two individuals, appellant and Kenneth Drengacs, saw the officer and ran around the corner of a building. Officer Shane Karnes also arrived at the scene and witnessed Officer Beeler in pursuit of appellant and Drengacs. Officer Karnes got out of his police cruiser and began to run through a parking lot where he thought he might catch appellant and Drengacs. As Officer Karnes came around the corner of a building, a car being driven by appellant was heading directly toward him. As the car approached him, Officer Karnes testified that when he moved to his left, the vehicle turned toward him. He then moved in the other direction, but the vehicle turned toward him again. After ordering appellant to stop, Officer Karnes fired two shots at the car. The car turned to the right, narrowly missing Officer Karnes, and then drove past him.
The vehicle exited the parking lot, and several police cruisers began pursuit. Officer Richard Blair saw the car on Wilson Road and joined in the chase. Officer Blair drove his cruiser beside the car and ordered appellant to stop the vehicle over his loudspeaker. Appellant did not stop, and Officer Blair again ordered him to stop. After appellant failed to stop, Officer Blair drove his cruiser in front of the car, forcing it to stop. Appellant and Drengacs were then apprehended.
Appellant was indicted on one count each of aggravated robbery, robbery, felonious assault on a police officer, failure to comply with an order or signal of a police officer, and possession of criminal tools. Appellant pleaded not guilty to all counts.
A jury trial was held from March 30, 1999 through April 8, 1999. During the trial, appellant moved to suppress statements he made to police officers while in custody. Appellant argued that his statements were not given knowingly and voluntarily due to his cocaine use that night and the previous week. The trial court conducted a hearing on the matter and overruled appellant's motion. On April 8, 1999, the jury returned a verdict of not guilty on the aggravated robbery and felonious assault on a police officer counts, and guilty on the robbery, failure to comply with an order or signal of a police officer, and possession of criminal tools counts. On May 5, 1999, the court sentenced appellant to six years on the robbery count, one month on the failure to comply with an order or signal of a police officer count, and six months on the possession of criminal tools count. Appellant now appeals, asserting the following assignments of error:
APPELLANT'S FIRST ASSIGNMENT OF ERROR:
 TRIAL COURT ERRED AS A MATTER LAW (sic) OR ABUSED ITS DISCRETION IN DENYING DEFENDANT-APPELLANT'S MOTION TO SUPPRESS EVIDENCE.
APPELLANT'S SECOND ASSIGNMENT OF ERROR:
 TRIAL COURT ERRED AS A MATTER LAW (sic) OR ABUSED ITS DISCRETION IN NOT GRANTING A JUDGMENT OF ACQUITTAL PURSUANT TO CRIMINAL RULE 29 FOR THE JURY VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
Appellant argues in his first assignment of error that the trial court erred in denying his motion to suppress the videotaped statement that he made while in custody. Appellant asserts that he did not voluntarily and intelligently waive his rights because: (1) he had been up for approximately one week smoking crack cocaine before the incident; (2) he was high on crack cocaine at the time of his arrest; (3) he had been struck above his left eye by a bullet or flying glass while being chased by the police; and (4) he appeared confused and disoriented during the interview, often using inappropriate and abusive language.
The warnings prescribed by Miranda v. Arizona (1966),384 U.S. 436, 86 S.Ct. 1602, operate to protect an accused's Fifth Amendment right against self-incrimination, which may be compromised by the coercion inherent in custodial interrogations. In order for a waiver of the rights required by Miranda to be valid, the state bears the burden of demonstrating a knowing, intelligent, and voluntary waiver based upon the totality of the facts and circumstances surrounding the interrogation. Moran v.Burbine (1986), 475 U.S. 412, 106 S.Ct. 1135. It is essential that the accused be fully aware of the nature of the constitutional rights being abandoned, the consequences of his decision to abandon them, and that the waiver not be the product of official coercion. Id. An express written or oral waiver, while strong proof of the validity of that waiver, is neither necessary nor sufficient to establish waiver. State v. Scott
(1980), 61 Ohio St.2d 155. The question is not one of form, but whether an accused in fact knowingly and voluntarily waived his rights. Id.
In the present case, appellant signed a waiver of his constitutional rights. Further, his testimony at trial indicates that the waiver of his constitutional rights during interrogation was knowing and voluntary. Appellant testified during the trial:
 Q. Do you remember talking to a detective later that night?
A. Yes, I do.
* * *
 Q. I'm going to hand you State's Exhibit No. 2. Could you look at that and tell me what that is.
A. The waiver right.
Q. Did he go over that with you that night?
A. Yes, he did.
Q. That's your constitutional rights?
A. Yeah.
Q. Pursuant to the Fifth Amendment?
A. Yeah.
Q. Does your signature appear on that document?
A. Yes, it does.
 Q. You waived your constitutional rights and chose to talk to the detective, correct?
A. Yes, I did.
 Q. Did you understand your rights at the time you were read them?
A. Yeah.
Appellant further testified:
 Q. Would your memory of what happened have been better then or would it be better now?
 A. Well, at the time that he interviewed me, I was pretty tired. And even if I'm on — with regards to what drug I'm on, if it's marijuana, if it's cocaine, as I had, whatever, I have a pretty good memory of, you know what I'm saying, of him sitting down, asking me some questions, and what I would tell him, you know what I mean, and looking back and being incarcerated as long as I have and not being around drugs, I pretty much remember exactly what happened.
 Q. The night he interviewed you, was you memory clear of what happened?
* * *
A. Yeah, it was clear.
In denying appellant's motion to suppress, the trial court found that there was no indication on the videotape that appellant was under the influence of anything, had any inability to comprehend, or had any difficulty in responding to the officer's questions. The trial court also found that during the interrogation appellant remembered numerous phone numbers, his address, his date of birth, and he was vehement in several of his responses. Further, the court noted that the officer explained appellant's constitutional rights orally and in layman's terms to appellant before questioning him.
After reviewing the record, under the totality of the circumstances, we conclude that appellant made a knowing, voluntary, and intelligent waiver of his constitutional rights and that his statements to police were made voluntarily. Appellant's claims of heavy drug intoxication to the degree of affecting his ability to knowingly and intelligently waive his rights are inconsistent with his own testimony given at trial. The record also fails to reveal anything to indicate that appellant was impaired or that he was coerced by police during the interrogation. Further, the interrogation took place approximately four to five hours after appellant had last used cocaine. Appellant testified that the intense high from smoking crack cocaine goes away after only one or two minutes. Accordingly, the trial court did not err in overruling appellant's motion to suppress, and we overrule appellant's first assignment of error.
Appellant argues in his second assignment of error that the trial court erred in denying his motion for judgment of acquittal as to the count for failure to comply with an order or signal of a police officer because the jury verdict was against the manifest weight of the evidence. At the close of the state's evidence, appellant moved for a judgment of acquittal pursuant to Crim.R. 29, which was denied. Appellant renewed his motion for acquittal after the close of all evidence, which was also denied.
Appellant contends that the trial court erred in denying his Crim.R. 29 motion because the jury verdict was against the manifest weight of the evidence. This argument raises two separate issues: Crim.R. 29(A) addresses the sufficiency of the evidence, while a manifest weight argument requires a slightly different analysis. "The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different." State v. Thompkins (1997), 78 Ohio St.3d 380, paragraph two of the syllabus. In Thompkins, the court explained the distinctions at length:
 With respect to sufficiency of the evidence, "`sufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law." Black's Law Dictionary (6 Ed. 1990) 1433. See, also, Crim.R. 29(A) (motion for judgment of acquittal can be granted by the trial court if the evidence is insufficient to sustain a conviction). In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law. State v. Robinson (1955), 162 Ohio St. 486
* * *. In addition, a conviction based on legally insufficient evidence constitutes a denial of due process. Tibbs v. Florida (1982), 457 U.S. 31, 45
* * * citing Jackson v. Virginia (1979), 443 U.S. 307
* * *.
 Although a court of appeals may determine that a judgment of a trial court is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence. Robinson, supra, 162 Ohio St. at 487 * * *. Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief." (Emphasis added.) Black's, supra, at 1594.
 When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "`thirteenth juror'" and disagrees with the factfinder's resolution of the conflicting testimony. Tibbs, 457 U.S. at 42 * * *. See, also, State v. Martin
(1983), 20 Ohio App.3d 172, 175 * * * ("The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction."). [Id.
at 386-387.]
Appellant was indicted for the fourth degree felony offense of failure to comply with the order or signal of a police officer, in violation of R.C. 2921.331(B) and (C)(1) and (3). At the time of the offense, this statute provided in relevant part:
 (B) No person shall operate a motor vehicle so as willfully to elude or flee a police officer after receiving a visible or audible signal from a police officer to bring his motor vehicle to a stop.
 (C) * * * A violation of division (A) of this section is a misdemeanor of the first degree. A violation of division (B) of this section is a misdemeanor of the first degree, except that a violation of division (B) of this section is a felony of the fourth degree if the jury or judge as trier of fact finds any one of the following by proof beyond a reasonable doubt:
 (1) In committing the offense, the offender was fleeing immediately after the commission of a felony;
* * *
 (3) The operation of the motor vehicle by the offender caused a substantial risk of serious physical harm to persons or property.
In the present case, after construing the evidence in favor of the prosecution, sufficient evidence was presented to find that appellant had violated R.C. 2921.331(B) and (C)(1) and (3). Officer Beeler testified that when he saw appellant and Drengacs, he yelled at them to stop, they saw him, and then ran around the corner of a building. After running after them and momentarily losing sight of them, Officer Beeler then saw them get into a small red car. The car accelerated "fairly quickly," but did not "burn rubber." Officer Beeler then saw Officer Karnes in front of the car trying to get out of its path. Officer Karnes fired two shots while standing in front of the car. He got out of the way of the accelerating car, and the car sped off around a building.
Officer Michael Kegley testified that he was driving on Wilson Road and appellant's car emerged from a field and passed him at a very high rate of speed. He turned on his overhead lights and followed the vehicle. He testified that he believed the car was traveling at seventy to seventy-five miles per hour. He caught up with the car, which had slowed to approximately forty-five miles per hour, and he activated his siren momentarily to signal to appellant that he was behind him. Two stereos were thrown out of appellant's car, which struck Officer Kegley's cruiser. Officer Kegley and two other cruisers executed a "swoop technique," blocking off appellant's car and forcing it to stop. Officer Kegley testified that when he asked Drengacs who shot his car, Drengacs stated, "The officer did when David tried to run him over."
Drengacs, who had been friends with appellant for twelve years, testified that after running from the police officer who was chasing them on foot, they got into their car and drove away. As he put a screwdriver and stereo underneath the seat, he heard shots and then saw an officer to the left of the vehicle but not in the road. He stated that they did not try to run over the police officer and that he did not think the car swayed from side to side but went in a straight line. He also testified that they were only traveling about thirty miles per hour at the time they drove past the police officer and that they had just started to accelerate. They did not "burn rubber."
Detective Kim Allen testified that, based upon the pictures of the bullet entrance and exit points on the car, she could not determine whether Officer Karnes had been standing off to the side of the vehicle when he fired shots or whether he was standing in front of the vehicle. The officer's stance at the time he fired the shots, the positioning of the car, and any deflection of the bullets would affect the determinations.
Officer Karnes testified that when he heard Officer Beeler say over the walkie-talkie that he was chasing appellant, he ran around the side of a building and down a driveway. He heard tires squeal, a car engine accelerate, and then saw the car coming toward him. He tried to move to his left, but the car moved toward him. He then tried to move in the other direction, but the car turned toward him again. Standing in the center of the driveway, he screamed "stop," but the appellant did not hesitate. He then fired two shots at the car. He testified that he was scared that he was going to be run over. The car veered to the side of him, missing him by inches and causing him to fall and injure his knee.
John Williamson, a resident at the apartment complex, stated that he heard two car doors shut, tires screech, and then two rounds of gunfire. He walked out onto his balcony and saw an officer standing in the middle of the driveway looking down at the ground.
Based upon our careful consideration of the record, and construing the evidence in favor of the prosecution as is required in a sufficiency analysis, we find that a reasonable jury could have found that the prosecution sufficiently proved the elements of failure to comply with an order or signal of a police officer beyond a reasonable doubt. There was sufficient testimony that appellant operated his car in a willful manner as to elude or flee Officer Karnes after receiving an audible signal from a police officer to bring his motor vehicle to a stop. Officer Karnes testified that he yelled "stop" to appellant as appellant drove his car toward him and then eventually past him and out of the apartment complex. The evidence was also uncontroverted that appellant had been a party to breaking into cars, stealing stereos, and attempting to flee the scene even after Officer Beeler and Officer Karnes saw him and ordered him to stop.
Further, there was sufficient evidence to show beyond a reasonable doubt that the operation of the car by appellant caused a substantial risk of serious physical harm to persons or property. Officer Karnes testified that the car was driving straight toward him and turned twice in his direction as he tried to move out of the way. He also stated that the vehicle narrowly missed him by inches, causing him to fall to the ground and injure his knee. Therefore, we find that construing the evidence most strongly in favor of the prosecution, the evidence was legally sufficient to sustain a verdict against appellant for violation of R.C. 2921.331.
Appellant also argues in this assignment of error that the trial court's decision was against the manifest weight of the evidence. In addressing the sufficiency of the evidence, we already discussed much of the evidence presented by the prosecution. Appellant testified on his own behalf at trial. Appellant stated that he drove his car around the building but did not squeal the tires. He also did not hear an officer yell "stop," but he immediately saw an officer standing on the left side of the road in a grassy area after he turned the corner. He testified that he drove straight and did not turn the car to the left or to the right. He did not try to hit the officer or turn toward him. Appellant stated that he had no intent to harm the officer. Although he testified at trial that the officer was standing on the side of the street, when first asked by police, he said that the officer was standing in the middle of the road. Drengacs also testified that their car did not move from side to side and that the officer was standing to the side and not in the middle of the road.
The jury certainly could have found appellant's own testimony, regarding the position of the officer and whether he swerved toward the officer, not credible due to his conflicting statements presented during the interrogation and his testimony at trial. The jury could also have reasonably concluded that Drengacs's testimony was not credible due to his long-standing friendship with appellant. Further, the jury could have reasonably found the testimony of Officers Beeler, Karnes and Williamson credible in finding that Officer Karnes had been standing in the middle of the road and appellant turned the vehicle toward him twice before he fired his gun.
After reviewing the entire record, weighing the evidence and all reasonable inferences, and considering the credibility of witnesses, we find that the jury did not clearly lose its way and create such a manifest miscarriage of justice that the conviction must be reversed. Importantly, we find that the evidence does not "weigh heavily against the conviction," and thus, the conviction as to appellant's failure to comply with an order or signal of an officer was not against the manifest weight of the evidence. Likewise, the jury could have reasonably found that in committing the offense, the offender was fleeing immediately after the commission of a felony and that the operation of the car by appellant caused a substantial risk of serious physical harm to persons or property. For the reasons set forth above, the finding that appellant operated his motor vehicle willfully as to elude or flee a police officer after receiving a visible or audible signal from a police officer to bring his motor vehicle to a stop was not against the manifest weight of the evidence. Therefore, the second assignment of error is overruled.
Accordingly, we overrule both appellant's assignments of error, and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
PETREE and McCORMAC, JJ., concur.
McCORMAC, J., retired, of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), ArticleIV, Ohio Constitution.