[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] OPINION
This is an appeal from the Lake County Court of Common Pleas. Appellant, Darnell Lumpkin, appeals from the trial court's judgment entry overruling his motion to suppress statements made to police officers after being arrested and charged for his suspected involvement in an armed robbery incident.
On April 22, 1996, Cynthia Kline ("Cynthia") was employed as a manager at George's Dinner Bell ("George's"), located at 1155 Bank Street in Painesville Township, Lake County, Ohio. At approximately 10:30 p.m., on April 22, 1996, Cynthia closed George's, exited the building, and walked to her automobile located in a parking lot across the street from the restaurant. While walking to her vehicle, Cynthia noticed a Caucasian male at a pay phone near George's. In crossing the street to the parking lot, which was out of view from the pay phone, Cynthia observed an African American male walking down the street toward her car. Once Cynthia had unlocked her car door and proceeded to enter her vehicle, the African American male approached her, reached into his pants pocket, pulled out a gun, held it to her head and demanded money. Cynthia handed the man her purse, which contained six dollars and some credit cards. The man then ran away from the parking lot. Cynthia immediately walked to a house nearby and called the sheriff's department.
After the police arrived, Cynthia was taken to the sheriff's department, where she provided Sergeant King with a description of the perpetrator and attempted to identify her assailant by viewing ten to twelve computer photographs. After approximately an hour at the Sheriff's Department, Cynthia was taken to the Painesville Police Department where she viewed additional photographs. Although Cynthia did not identify any of the individuals in the pictures as the actual perpetrator, she did identify to police one photograph which demonstrated the type of hairstyle that was similar to the perpetrator's hair.
Lieutenant Lonnie R. Sparkman ("Sparkman"), who was a sixteen-year veteran of the Lake County Sheriff's Department, was assigned as the lead investigator in the robbery incident. In the course of his investigation, Sparkman obtained evidence from a confidential informant concerning individuals who might have information about the robbery at issue. On October 10, 1996, the Painesville Municipal Court issued a warrant for the arrest of appellant, charging him with aggravated robbery, in violation of R.C. 2911.01, with a firearm specification, in violation of R.C.2941.141, an act constituting an aggravated felony in the first degree.
In early November 1996, appellant was arrested. On November 4, 1996, at approximately 9:00 a.m., Sparkman interviewed appellant at the Lake County Sheriff's Department. The following facts, concerning that interview, are largely derived from the deposition of Sparkman, conducted on July 13, 1997.[1] Importantly, Sparkman refreshed his recollection of appellant's statements by referring to his report of that interview.
In his deposition, Sparkman stated that only he and appellant were present at the interview, that he read appellant his Miranda
rights, and that appellant indicated that he understood those rights. In the transcript of the motion to suppress hearing, Sparkman stated that after reading appellant his Miranda rights, appellant stated, "I understand my rights, and I know I can talk to a lawyer first." The transcript of the motion to suppress proceeding also demonstrates that the trial court found that appellant waived his Miranda rights.
In the deposition Sparkman further stated that during the interview, and after appellant communicated that he understood hisMiranda rights, he told appellant that his name had come up as a man with a gun involved in an armed robbery at George's. According to Sparkman, appellant responded by stating that "he didn't have no gun, a man with blond hair had a gun." When asked whether the man with blond hair was Tom Allen, appellant said, "Yeah." Additionally, appellant stated that he was with Todd Campbell ("Campbell"), Phil Jenkins ("Jenkins"), and Tom Allen ("Allen") on the night of April 22, 1996. According to Sparkman, appellant also admitted to being at the scene of the robbery and that he was the only black male present. Finally, Sparkman stated that appellant told him that everybody in the car knew that the robbery was going to take place. Immediately thereafter, appellant stated that he wanted time to think and didn't want to talk anymore. Sparkman then terminated the interview and directed corrections officers to take appellant back to jail. In the deposition, on cross-examination, Sparkman admitted that he did not ask appellant for a written statement of their conversation because the interview had been prematurely terminated.
On November 21, 1996, appellant posted bond and was discharged from jail. On February 14, 1997, the Lake County Grand Jury indicted appellant on one count of aggravated robbery, an aggravated felony of the first degree, in violation of R.C.2911.01, with a firearm specification, R.C. 2941.141. On February 28, 1997, appellant appeared in court and signed a statement waiving his right to be present at his arraignment. On that date, the court also continued appellant's bond.
On June 20, 1997, appellant filed a motion to suppress any oral or written statements made by him in violation of his rights guaranteed by the Fifth and Fourteenth Amendments of the United States Constitution, and Article I, Sections 10 and 16 of the Ohio Constitution. On July 11, 1997, the trial court conducted a hearing on appellant's motion to suppress. On July 28, 1997, the trial court entered judgment overruling appellant's motion to suppress. From July 28 to July 29, 1997, the trial court conducted a jury trial in this matter. At trial, the jury watched the videotaped deposition of Sparkman; however, while the videotape was preserved as part of the record, the jury was denied their request to review the tape during their deliberations. In addition, the report used by Sparkman in his videotaped deposition to refresh his memory concerning appellant's statements during their interview was not admitted at trial. Furthermore, the trial court denied the jury its request to review the interrogation report as part of their deliberations.
The jury returned its verdict on July 30, 1997, finding appellant guilty of having committed aggravated robbery with a firearm specification, an aggravated felony of the first degree, in violation of R.C. 2911.01 and 2941.141. In a judgment entry dated July 30, 1997, the trial court sentenced appellant to serve an indefinite term of incarceration of seven to twenty-five years plus an additional three year term of incarceration on the firearm specification, which was to be served prior to and consecutive with the indefinite term of incarceration.
On August 29, 1997, appellant timely filed this notice of appeal. Appellant now asserts the following assignment of error:
 "The trial court erred to the prejudice of the appellant by denying the defense motion to suppress uncounselled statements by the defendant to police officers after he had been arrested upon a complaint and warrant and by admitting the statements into evidence at trial."
Appellant contends that he was denied his Fifth, Sixth, andFourteenth Amendment rights because the trial court overruled his motion to suppress statements made by him during a police interrogation without the presence of counsel and without having effectively waived his Miranda rights. In his brief, appellant concedes that he was read his Miranda rights, but claims that he was immediately interrogated thereafter, before being given an opportunity to invoke his rights. In further support of his motion to suppress, appellant contends that uncounselled statements from a person previously charged in the matter, which are elicited by the police, always violate one's constitutional rights and, therefore, cannot be used against the defendant. Appellant references the cases of Massiah v. United States (1964),377 U.S. 201; Spano v. New York (1959), 360 U.S. 315; Maine v.Moulton (1985), 474 U.S. 159; and Michigan v. Jackson (1986),475 U.S. 625, in support of his proposition.
Contrary to appellant's contentions, none of the foregoing cases support appellant's claim. In Massiah, the Court held that the petitioner was denied his Sixth Amendment protections because his "own incriminating words, which federal agents had deliberately elicited from him after he had been indicted and in the absence of his counsel," were used against him at trial.377 U.S. at 206. In that case the petitioner's incriminating words were obtained from him while he was free on bail, and after heretained a lawyer, by installing a listening device in the car of a man named Colson, who was charged with petitioner in the same offense, and who agreed to cooperate with police. During a lengthy conversation between Colson and the petitioner, agents heard the petitioner make incriminating statements. Those statements were used against him at trial. The Court held that the defendant's own incriminating statements obtained by police under those circumstances could not be used as evidence against him at his trial
 The Court stated, "[a]ll that we hold is that the [petitioner's] own incriminating statements, obtained by federal agents under the circumstances here disclosed, could not constitutionally be used by the prosecution as evidence against him
at his trial." (Emphasis sic.) Id.
at 207.
In Spano, the petitioner had been questioned for eight straight hours by fifteen interrogators despite having made numerous requests to speak to his attorney. Additionally, the police admitted that the petitioner had requested to speak to his attorney during his interrogation, but was refused and further interviewed. Also, the Court determined that the petitioner only had finished part of his first year of high school, had a history of emotional instability, and was subject to leading questions at the interrogation. Spano, 360 U.S. at 322. Thus, the Court held that the petitioner was overborne by official pressure, fatigue, and sympathy. Id. at 323. Therefore, petitioner's conviction was reversed under the Fourteenth Amendment. Id. at 324.
Appellant correctly states that the Court, in Moulton, concluded that the Sixth Amendment prevents police from obtaining incriminating statements from the accused by knowingly circumventing his right to have counsel present during confrontations with state agents. 474 U.S. at 176. Yet, contrary to appellant's assertions, the Court did not conclude, as appellant wants us to believe, that all uncounselled statements given to a police officer, concerning a matter that a defendant was previously charged in, constitute a circumvention of one'sSixth Amendment right to counsel. Rather, the court held that "the Maine police knowingly circumvented Moulton's right to have counsel present at a confrontation between Moulton and a police agent" by secretly recording conversations between him and an undercover informant who was wearing a body wire transmitter, after he was indicted and after retaining counsel. Id. at 176-177, 180.
Finally, in Jackson, 475 U.S. at 636, the Court held that "if police initiate interrogation after a defendant's assertion, at an arraignment or similar proceeding, of his right to counsel, any waiver of the defendant's right to counsel for that police-initiated interrogation is invalid." In that case, the petitioner had unequivocally asked to be appointed counsel at his arraignment, and several times thereafter, but police initiated an interrogation prior to the petitioner being able to consult with his attorney. Confessions from the interrogation were admitted at trial and the petitioner was convicted of murder.
The cases of Massiah, Spano, Moulton, and Jackson do not support appellant's assertion that his constitutional rights were violated simply because police officers interrogated him without the presence of counsel concerning a matter for which he had been previously charged and arrested. Unlike the petitioner in Massiah
and Moulton, appellant's statement's were obtained by police prior to him having retained counsel and before indictment. Unlike the petitioner in Spano, appellant was questioned for no more than five to ten minutes by one police officer, and once he indicated that he did not want to talk anymore, the interrogation was immediately terminated. Furthermore, no evidence has been presented that appellant was emotionally unstable or that he was subjected to leading questions by police. Finally, unlike the petitioner in Jackson, appellant did not make any direct or indirect request for counsel at any time prior to being interviewed.
We will now address appellant's assignment of error pursuant to an appropriate constitutional analysis.
Once a person has been arrested and subjected to police custodial interrogation, the Fifth Amendment privilege against self-incrimination and the Sixth Amendment right to assistance of counsel are invoked. State v. Mackey (Feb. 18, 1992), Portage App. No. 1142, unreported, at 6. "The required Miranda warnings not only protect the privilege against self-incrimination, but also the right to the assistance of counsel * * *." Id. at 7. After a defendant has been properly advised of his Miranda rights, he may waive those rights and make an incriminating statement against himself without the presence of counsel. See, generally, Miranda,384 U.S. 436.
 "An express written or oral statement of waiver of the right to remain silent or of the right to counsel is usually strong proof of the validity of that waiver, but is not inevitably either necessary or sufficient to establish waiver. The question is not one of form, but rather whether the defendant in fact knowingly and voluntarily waived the rights delineated in the Miranda case. As was unequivocally said in Miranda, mere silence is not enough. That does not mean that the defendant's silence, coupled with an understanding of his rights and a course of conduct indicating waiver, may never support a conclusion that a defendant has waived his rights. The courts must presume that a defendant did not waive his rights; the prosecution's burden is great; but in at least some cases waiver can be clearly inferred from the actions and words of the person interrogated." North Carolina v. Butler (1979), 441 U.S. 369, 373.
The prosecution retains the burden to prove by a preponderance of the evidence that a defendant "voluntarily, knowingly, and intelligently" waived his Miranda rights based on the "totality of the circumstances" surrounding the interrogation. State v. Eley
(1996), 77 Ohio St.3d 174, 178; State v. Scott (1980), 61 Ohio St.2d 155,161. In addition, the trier of fact is charged with the responsibility to determine whether witness testimony will be accepted in a motion to suppress, and such finding will not be disturbed on appeal absent an abuse of discretion. State v. Broom
(1988), 40 Ohio St.3d 277, 286.
Even if a defendant is properly Mirandized and waives his Fifth
and Sixth Amendment rights, a confession will not be admitted into evidence if it was involuntary or obtained by inappropriate direct or indirect promises. State v. Edwards (1976), 49 Ohio St.2d 31,40. In determining whether a defendant's confession was involuntary, "the court should consider the totality of the circumstances, including the age, mentality, and prior criminal experience of the accused; the length, intensity, and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement." Id. at paragraph two of the syllabus. Additionally, the state possesses the burden to establish the voluntariness of a confession by a preponderance of the evidence, once its admissibility is challenged. State v. Melchior (1978), 56 Ohio St.2d 15, 25. An appellate court must review the issue of voluntariness de novo.Arizona v. Fulminante (1991), 499 U.S. 279, 287; State v. Loza
(1994), 71 Ohio St.3d 61, 65-66.
In the case sub judice, appellant's Fifth and Sixth Amendment rights were invoked because appellant was interrogated in a police station subsequent to his arrest. Furthermore, appellant concedes that he was read his Miranda rights. Based on the testimony of Sparkman, adduced at the hearing on appellant's motion to suppress, the trial court determined that appellant had waived hisMiranda rights. As indicated in Butler, the United States Supreme Court held that neither an oral nor a written statement of waiver is required; rather, a course of conduct indicating the defendant's understanding and waiver of his Miranda rights is sufficient. Thus, although appellant did not sign a waiver of hisMiranda rights, the trial court could, nevertheless, conclude that such rights were in fact waived.
In the transcript of the hearing on appellant's motion to suppress, the trial court determined that the prosecution's testimony was uncontroverted and that appellant waived his Miranda
rights. The trial court arrived at its conclusion after making the following findings: it accepted the testimony of Sparkman that appellant stated he understood his rights; there was no indication that appellant was under the influence of any alcohol or drugs; the interrogation was short and not conducted late at night or early in the morning; appellant knew he could stop the interrogation at any time, as attested to by the fact that he did terminate it; the defendant was alert and able to carry-on a conversation; and appellant indicated, through his conduct and ability to dialogue, that he was able to appreciate the nature of the verbal exchange with Sparkman.
The record supports the trial court's conclusion that Sparkman read appellant his Miranda rights and that appellant acknowledged his Miranda rights before any questioning began. As the trier of fact at the suppression hearing, the trial court chose to accept the testimony of Sparkman over that of appellant's counsel, and determined that appellant had made a voluntary waiver. As stated in Broom and Scott, the trial court is charged with the responsibility of deciding which testimony will be accepted in a suppression hearing.
In looking at the totality of the circumstances, we conclude that the trial court did not abuse its discretion in holding that appellant voluntarily, knowingly, and intelligently waived hisMiranda rights. Appellant has not contested Sparkman's assertion that the interview lasted no longer than fifteen minutes or that only Sparkman and appellant were present at the interrogation. There was no evidence presented that the interview was intense. Also, only one encounter between Sparkman and appellant occurred, and it was from this sole encounter that the statements in question were produced. In addition, appellant has not made any assertions that he was physically mistreated, threatened or promised anything in exchange for his statements. Finally, there is no evidence in the record which undermines the trial court's decision to accept the testimony of Sparkman over that of appellant.
Therefore, this court concludes that appellant was properly informed of his Fifth and Sixth Amendment rights, that appellant waived those rights during the time in which he made the incriminating statements, and appellant's waiver was voluntary, knowing, and intelligent.
Assuming arguendo that appellant's confessions were inadmissible, it is this court's position that appellant's conviction must be affirmed on the basis that there was overwhelming evidence, aside from appellant's incriminating statements, which would lead a jury to decide the case as it did.
"We have repeatedly reaffirmed the principle that an otherwise valid conviction should not be set aside if the reviewing court may confidently say, on the whole record, that the constitutional error was harmless beyond a reasonable doubt." State v. Williams
(1988), 38 Ohio St.3d 346, 349, quoting Delaware v. Van Ardsall
(1986), 475 U.S. 673, 681. When a constitutional error in the admission of evidence exists, "such error is harmless beyond a reasonable doubt if the remaining evidence, standing alone, constitutes overwhelming proof of defendant's guilt." State v.Williams (1983), 6 Ohio St.3d 281, paragraph six of the syllabus.
Aside from appellant's incriminating statements, there was overwhelming evidence produced at trial establishing his guilt. At trial, Campbell testified to the following: (1) he took appellant, Jenkins, and Allen to George's on April 22, 1996, sometime between 8:30 p.m. and 11:00 p.m.; (2) he drove to George's because Allen said that appellant wanted to see his girlfriend; (3) once at George's he and Jenkins waited in his truck while Allen and appellant exited the vehicle; (4) after "a minute or two," appellant and Allen returned to his vehicle and Allen was shouting "go, go, go"; (5) upon returning to a friend's apartment, he heard appellant state that he [appellant] "couldn't believe he robbed somebody * * * and only got six dollars"; and (6) he also heard appellant refer to using a gun in the robbery.
At trial, Stephanie Fiske ("Fiske") also testified. In her testimony, Fiske conveyed the following information: (1) she was dating Allen at the time of the robbery; (2) she knew appellant as "Dee"; and (3) while at a friend's apartment after the date of the robbery, where appellant and some other people were present, she heard someone say, "I can't believe I robbed somebody for a M.F.ing six dollars."
Furthermore, the victim, Cynthia, testified to the following: (1) she left George's by herself on the night of April 22, 1996, sometime between 10:00 p.m. and 10:30 p.m.; (2) while walking to her vehicle, she notice a Caucasian male at a pay phone near George's; (3) after walking out of view of the telephone booth, she saw an African American male walking down the street toward her; (4) while attempting to enter her vehicle, the African American male approached her, demanded money, and pulled out a gun; (5) she handed the man her purse which contained six dollars and some credit cards; (6) the place where the robbery occurred was lit by a "big, bright street light right overhead"; and (7) she observed the appellant face to face within arms length of each other. Finally, Cynthia identified appellant, in court, as the perpetrator.
In light of the testimonial evidence presented in this case, we conclude that even if appellant's incriminating statements were inadmissible, the record presents overwhelming evidence of appellant's guilt.
For the foregoing reasons, appellant's assignment of error is without merit. Accordingly, the judgment of the Lake County Court of Common Pleas is affirmed. _______________________________ PRESIDING JUDGE DONALD R. FORD
NADER, J.,
O'NEILL, J., concur.
[1] The trial court ordered that Sparkman be deposed on videotape on Sunday, July 13, 1997, because Sparkman would be attending the F.B.I. academy in Quantico, Virginia at the time of trial and, therefore, would be unable to attend.