OPINION
Defendant-appellant, Cornell L. Thomas, appeals from his June 1, 2001 judgment of conviction on one count of assault on a peace officer. For the reasons that follow, we affirm the judgment of the Franklin County Court of Common Pleas.
On June 10, 1999, the Franklin County Grand Jury indicted appellant on two counts of assault on a peace officer, in violation of R.C. 2903.13. Then, on June 23, 1999, appellant was indicted on one count of possession of cocaine, a fourth degree felony, in violation of R.C. 2925.11. The indictments stemmed from a single encounter with police that took place on May 6, 1999. Appellant filed a motion to suppress statements he allegedly made to the officers after his arrest. The trial court denied the motion. The state moved to have the two indictments tried together, and the trial court granted the motion.
A jury trial commenced on May 21, 2001. The following facts are from the trial of the matter. On the evening of May 6, 1999, while it was still light outside, appellant and a friend, Jasper Brown, were seated in a white Cadillac parked outside 1048 Indigo Way in Columbus, Ohio. Officers Nathan Place and Steven Redding of the Columbus Police Department were on bicycle patrol in the area when they approached the Cadillac. The officers testified that they smelled what they believed to be marijuana and approached the Cadillac to question the occupants about possible drug abuse.
Officer Redding approached appellant on the driver's side of the vehicle where appellant was seated, while Officer Place approached on the passenger side where Brown was seated. Appellant became nervous and agitated and repeatedly stated that he needed to go to the bathroom. Officer Redding told appellant to remain in the car, but appellant pushed the door open and got out of the car.
Officer Redding testified that appellant then "popped up" and shoved Redding back. (Tr. I, at 90.) Officer Redding called for his partner who came around the front of the vehicle. A fight ensued between appellant and the two officers. During the fight, the officers testified that appellant reached into his pocket and threw a wad of cash and a baggie containing a white substance into the air. The officers eventually took appellant to the ground where he was maced. The officers signaled an officer in trouble call, and other officers responded. Appellant was eventually handcuffed and taken to a police substation. Officer Redding sustained injuries to his right arm and right cheek. Officer Place testified that he sustained merely superficial abrasions. Appellant sustained injuries to his head, his face, and his knees.
The officers testified that, at the substation, Officer Place read appellant his constitutional rights pursuant to Miranda v. Arizona (1966), 384 U.S. 436, and that appellant verbally waived those rights. The officers testified that appellant then stated that he had just concluded a drug transaction when the officers arrived, that he used the need to go to the bathroom as an excuse to get rid of the crack cocaine, and that he would have done anything at that point to get away from the officers. Several hours later, Detective Patricia Dailey attempted to question appellant. Prior to reading him the constitutional rights waiver, Detective Dailey testified that appellant acknowledged that the arresting officers had already read him his constitutional rights. Appellant then asserted his rights under Miranda and refused to make any statements.
Appellant took the stand himself and called two other witnesses on his behalf. Linda Bailey, who lives at 1048 Indigo Way, was standing outside when the officers encountered appellant. Ms. Bailey testified that she did not see appellant try to hit Officer Redding with the car door or do anything that seemed violent or threatening. She said appellant asked her if he could use her bathroom, and when he stood up, both officers wrestled him to the ground, handcuffed him, and sprayed him with mace after he was handcuffed. Ms. Bailey did not see appellant threaten the officers, strike them, or kick them.
Eric Nivens, who also lives on Indigo Way, was about fifty yards away and walking towards appellant's car when the officers rode up on their bikes. Nivens testified that the officers asked appellant to get out of the car and when appellant complied, the officers started to grab him, and appellant jerked away saying that he didn't do anything. Nivens testified that the officers then threw appellant down on the concrete and attacked him. Nivens testified that he did not see appellant try to hit or kick the officers. As Nivens tried to walk closer, he stated that the officers told him to get back and pointed their guns at him.
Appellant took the stand and testified that he and Jasper Brown were sitting in the car smoking a small cigar and listening to music when the officers approached and proceeded to run background checks on appellant and Brown. Neither had any outstanding warrants, and appellant then told one of the officers that he had to use the bathroom. According to appellant, the officer did not reply, and appellant then opened the car door and got out of the car. Appellant stated that he did not make any threats or threatening gestures towards the officers. Appellant testified that he had taken two steps when he heard the officer on the right side of the car pull a gun out and put the gun to the passenger's head. Appellant stated that he turned around and was slammed to the concrete. According to appellant, the officer had an arm around appellant's throat, and appellant could not breathe. Appellant stated that he was handcuffed and then sprayed with mace, and eventually dragged into a cruiser. Appellant stated that he did not have any crack cocaine in his possession and did not throw any money into the air. Appellant stated that, at the police station, he was not advised of his constitutional rights, that he made no statements to the officers and that, while he was sitting down and handcuffed, he was maced repeatedly. He was then taken downtown where Detective Dailey did not advise him of his constitutional rights. Appellant testified that he told Detective Dailey that he wanted to speak to an attorney.
The jury found appellant guilty of assault on Officer Redding, and not guilty on the other count of assault on Officer Place. The jury was unable to reach a verdict on the charge of possession of cocaine.
On appeal, appellant has asserted the following assignments of error:
 I. The trial court erred in consolidating Appellant's separate indictments for trial, thereby depriving him of due process of law as guaranteed by the Fourteenth Amendment to the United States Constitution and comparable provisions of the Ohio Constitution.
 II. The trial court erred in overruling Appellant's motion to suppress statements made to Officers Place and Redding, as these statements were obtained in violation of Miranda v. Arizona.
 III. The trial court erred in overruling Appellant's motion to suppress statements made to Officers Place and Redding, as these statements were obtained involuntarily and in violation of his rights as guaranteed by the Fourteenth Amendment to the United States Constitution and comparable provisions of the Ohio Constitution.
In his first assignment of error, appellant asserts the trial court erred in consolidating the two indictments for trial. Appellant asserts that the separate offenses of assault on a peace officer and possession of crack cocaine involved distinct conduct, unique evidence, and that the prejudice from trying them together was severe. Appellant asserts that in the absence of joinder, the evidence of appellant's alleged possession of crack cocaine would have been inadmissible in the prosecution of the case of assault on a peace officer. Appellant also asserts that the joinder of the indictments chilled his ability to testify, although we note that appellant took the stand in his own behalf and denied all the charges.
Crim.R. 8(A) provides:
 (A) Joinder of offenses. Two or more offenses may be charged in the same indictment, information or complaint in a separate count for each offense if the offenses charged * * * are of the same or similar character, or are based on the same act or transaction, or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, or are part of a course of criminal conduct.
Crim.R. 13 provides:
 The court may order two or more indictments or informations or both to be tried together, if the offenses or the defendants could have been joined in a single indictment or information. * * *
Thus, pursuant to Crim.R. 8(A) and 13, two or more offenses can be tried together if the offenses are of the same character, based on connected transactions, or are part of a course of conduct. The law favors joining multiple offenses in a single trial under Crim.R. 8(A) if the offenses charged are of the same or similar character. State v. Lott (1990), 51 Ohio St.3d 160, 163. When a defendant claims that he was prejudiced by the joinder of multiple offenses, a court must determine: (1) whether evidence of the other crimes would be admissible even if the counts were severed; and (2) if not, whether the evidence of each crime is simple and distinct. State v. Schaim (1992), 65 Ohio St.3d 51, 59. If the evidence of other crimes would be admissible at separate trials, any prejudice that might result from the jury's hearing the evidence of the other crime in a joint trial would be no different from that possible in separate trials, and a court need not inquire further. Id.
Here, evidence of the drugs was permissible to show motive for the assault. Evidence of the assault was admissible to show that appellant knew he possessed the drugs and was trying to avoid going to prison. Moreover, the evidence of each case was very direct. The police officers testified that appellant attacked them; appellant and his witnesses testified that he did not. The police testified that appellant threw drugs and cash; appellant testified that he did not. The jury's verdict showed that the jury considered each charge separately as they found appellant guilty of one assault, not guilty of the other, and they were unable to reach a unanimous verdict on the possession charge. The first assignment of error is not well-taken and is overruled.
In his second and third assignments of error, appellant argues the trial court erred in overruling his motion to suppress statements allegedly made to the arresting officers after he was taken to the police substation.
The essence of appellant's argument is that the state failed to meet its burden of proving that appellant voluntarily waived his right to remain silent. Typically, an appeal from a trial court's decision on a motion to suppress presents a mixed question of law and fact. State v. Moss (Apr. 12, 2001), Franklin App. No. 00AP-574, unreported; State v. Fisher (Oct. 17, 2000), Franklin App. No. 99AP-1497, unreported, citing State v. Long (1998), 127 Ohio App.3d 328, 332. The question of fact arises because the trial court, during an evidentiary hearing on a motion to suppress, acts as the trier of fact and is in the best position to resolve factual questions and evaluate the credibility of witnesses. State v. Brooks (1996), 75 Ohio St.3d 148, 154. Thus, an appellate court will defer to the trial court's factual conclusions. The question of law arises when an appellate court determines whether the trial court reached the correct legal conclusion in applying the facts of the case. State v. Venham (1994), 96 Ohio App.3d 649, 653.
Here, appellant had just been in a struggle with the officers. He had been maced, and his eyes were watery. He was handcuffed. The officers testified that they did not obtain a signed written waiver of appellant's constitutional rights because appellant had been combative and they were therefore unwilling to unlock his handcuffs. However, a written waiver is not necessary to establish proof of waiver. State v. Scott (1980),61 Ohio St.2d 155. According to Officer Redding's testimony, Officer Place specifically asked appellant if he wanted to speak to him without an attorney present, and appellant agreed to do so. (Tr. I, at 20.) Officer Place testified that appellant indicated that he understood his rights and was willing to talk to the officers. (Tr. I, at 44.) This testimony was corroborated by the testimony of Detective Dailey, who later attempted to question appellant at police headquarters. Detective Dailey recalled that, when she read appellant his constitutional rights, appellant acknowledged that the patrol officers had already read him those rights. (Tr. I, at 66.) After orally waiving his rights, appellant then made a statement to the officers in which he admitted engaging in a drug transaction but did not specifically admit to assaulting the officers. There was no evidence that appellant underwent a lengthy interrogation or that he was mistreated in order to obtain a confession. Medics had treated appellant at the scene for the effects of mace. Appellant was maced again at the police substation, but, according to the testimony of the officers, this occurred after he made his statement. The trial court was in the best position to assess the credibility of this testimony and it found that appellant voluntarily and orally waived his right to remain silent. See State v. Curry (1994), 95 Ohio App.3d 93, 96 ("[i]n a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and evaluate witness credibility"). There was competent credible evidence to support the trial court's findings. Accordingly, appellant's second and third assignments of error are not well-taken and are overruled.
Based on the foregoing, appellant's three assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
TYACK, P.J., and BRYANT, J., concur.