OPINION
Defendant-appellant, Calvin Portis, appeals from a judgment of the Franklin County Court of Common Pleas finding him guilty of one c ount of sexual battery, in violation of R.C. 2907.03.
According to plaintiff-appellee, the state of Ohio's evidence, defendant and the victim, Tosha Callender, were coworkers. Defendant asked Callender out on a date and she agreed. On the evening of October 29, 1999, the two went out to a nightclub located less than a mile from Callender's home. While at the nightclub, Callender got drunk. At some point, Callender went to the ladies' room. However, when Callender did not promptly return, defendant asked a waitress to check on her. The waitress found Callender asleep in the ladies' room and told defendant that Callender needed to leave the nightclub. Defendant and Callender left the nightclub in defendant's car.
Callender testified that she had no recollection of leaving the nightclub with defendant. According to Callender, the next thing she remembered after being awakened by the waitress in the ladies' room is finding defendant engaging in cunnilingus with her. Callender became upset, asked defendant to stop, and to take her home. Defendant apologized, and drove Callender home.
When Callender got home, she awakened her cousin, Stephanie Ferguson, with whom she shared an apartment. Ferguson testified that Callender was crying and intoxicated and told her that she had been raped. Ferguson's then telephoned the police. In response to Ferguson's call, Officer Steve Stack of the Columbus Police Department was dispatched to Ferguson's apartment. Officer Stack arrived at the apartment between 3:30 and 4:00 a.m. on the morning of October 30, 1999. Officer Stack testified that when he arrived, Callender was crying and appeared to be intoxicated. In addition, Detective Shannon David of the Columbus Police Department testified that when she met with Callender around 5:00 a.m. on October 30, 1999, Callender still appeared to be intoxicated.
In response to a request by Detective David, defendant voluntarily presented himself at the police station on February 10, 2000, and gave a videotape-recorded statement to Detective David. According to this statement, which was played for the jury, when defendant and Callender left the nightclub, Callender told him that she did not want to go home in her intoxicated condition. Consequently, defendant drove to a parking lot and parked the car intending for Callender to sleep in his car. Once the car was parked, Callender proceeded to undress. The two then engaged in sexual inter-course three times. Defendant then began to perform cunnilingus on Callender. As he was doing so, Callender sat up, asked for her pants, accused defendant of rape, and started to cry. Prior to defendant giving his statement, the police were unaware that sexual intercourse had occurred between defendant and Callender, as cunnilingus was the only sexual conduct that Callender remembered having taken place.
On July 10, 2000, the Franklin County Grand Jury indicted appellant on a single count of sexual battery, in violation of R.C. 2907.03. Defendant subsequently filed a motion to suppress the videotaped statement he gave to the police and a motion in limine seeking to have any reference to "rape" excluded from this trial. The trial court overruled both motions. Beginning September 10, 2000, defendant was tried before a jury. On September 13, 2001, the jury found defendant guilty of one count of sexual battery. The trial court subsequently sentenced defendant to two years of incarceration. Defendant appeals from his conviction and sentence assigning the following errors:
"ASSIGNMENT OF ERROR NO. 1:
"THE TRIAL COURT ERRED IN OVERRULING THE DEFENDANT'S MOTION TO SUPPRESS THE DEFENDANT'S TAPED INTERVIEW WITH A DETECTIVE ON THE BASIS THAT THE DEFENDANT WAS UNDER THE INFLUENCE OF ALCOHOL AT THE TIME OF THE INTERVIEW.
"ASSIGNMENT OF ERROR NO. 2:
"THE TRIAL COURT ERRS WHEN IT OVERRULES A DEFENDANT'S MOTION IN LIMINIE AND ADMITS INTO EVIDENCE REFERENCES TO THE WORD `RAPE' IN THIS SEXUAL BATTERY CASE.
"ASSIGNMENT OF ERROR NO. 3:
"THE TRIAL COURT ERRED IN PERMITTING THE PROSECUTION TO INTRODUCE INADMISSIBLE HEARSAY DECLARATIONS AS EXCITED UTTER-ANCES AND AS AN EXCEPTION TO THE HEARSAY RULE.
"ASSIGNMENT OF ERROR NO. 4:
"THE TRIAL COURT ERRED IN DENYING THE DEFENDANT THE RIGHT TO CROSS-EXAMINE A DETECTIVE REGARDING A PRIOR INCONSISTENT STATEMENT."
In his first assignment of error, defendant argues that the trial court erred in overruling his motion to suppress the videotape recorded statement he provided to the police, because it was obtained in violation of Miranda v. Arizona (1966), 384 U.S. 436, 86 S.Ct. 1602.
In Miranda, the United States Supreme Court held that interrogation of a suspect in police custody entails certain procedural safeguards, now commonly known as Miranda warnings, to protect a suspect's Fifth and Fourteenth Amendment privilege against self-incrimination. Id. at 444. Further, the custodial statements of a defendant may not be used against him in a subsequent criminal proceeding unless the prosecution can demonstrate that: (1) defendant was given the Miranda warnings; and (2) thereafter made a knowing and intelligent waiver of his Fifth Amendment right against self-incrimination. Id. at 479.
Defendant does not dispute that he was given the Miranda warnings and signed a written waiver prior to the initiation of the police questioning which resulted in his statement. Rather, defendant contends that the state failed to meet its burden of demonstrating that he knowingly and intelligently waived his Miranda rights, given the evidence that he had been drinking sometime earlier on the day of his statement.
Defendant correctly points out that the fact that he signed a Miranda waiver does not provide conclusive proof that the waiver was knowingly and intelligently made. State v. Scott (1980), 61 Ohio St.2d 155, paragraph one of the syllabus. Instead, the determination of whether a defendant knowingly and intelligently waived his Miranda rights involves a two-step inquiry:
"First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the `totality of the circumstances surrounding the interrogation' reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the Miranda rights have been waived." Moran v. Burbine (1986), 475 U.S. 412, 421, 106 S.Ct. 1135.
Here, the videotaped police interview of defendant demonstrates that defendant's waiver was made knowingly and intelligently. It is true that at the outset of the interview Detective David told defendant that he smelled of alcohol and asked him what he had had to drink. Defendant answered that he had drunk two shots of brandy after leaving work. However, defendant further stated that after drinking the brandy, he had gone home, taken a shower and gone to bed. In addition, defendant stated that he did not feel intoxicated and exhibited no signs of intoxication during the interview. Defendant was lucid, spoke clearly, and was easily able to read a portion of the Miranda waiver form aloud. When Detective David asked defendant whether he understood his rights and wanted to talk to her, defendant responded affirmatively to both questions before signing the waiver form.
The totality of the circumstances surrounding defendant's interview reveal that defendant was an alert, literate individual who understood his rights, and the possible consequences of his decision to relinquish those rights and provide police with his version of the facts.
Although not raised by the parties, we note that defendant's videotaped interview would probably have been admissible even if defendant's Miranda waiver had not been knowingly and intelligently made, as defendant was not in police custody when he was interviewed by Detective David. The determination of whether a person who speaks with the police is in custody depends on the objective circumstances surrounding the interview. Stansbury v. California (1994), 511 U.S. 318, 323,114 S.Ct. 1526. Here, the objective circumstances surrounding defendant's police interview indicate that a reasonable person in defendant's position would have believed that he was free to terminate the interview and leave at anytime. At the time of the interview, defendant had not yet been indicted or arrested. Further, it is uncontroverted that defendant voluntarily presented himself at the police station to speak with Detective David. Finally, defendant was allowed to leave the police station following the interview.
Defendant's first assignment of error is overruled.
Defendant's second and third assignments of error will be addressed together, as both challenge the trial court's admission of evidence which included the word "rape," as such evidence was unfairly prejudicial to defendant. Specifically, defendant contends that the trial court erred in admitting Callender's roommate's testimony that Callender told her she had been raped when she got home, and in refusing to redact those portions of his videotaped police interview in which he stated that he "did not rape" Callender and that Callender told him that he had raped her.
A trial court has broad discretion in determining whether to admit or exclude evidence and, in the absence of an abuse of discretion that results in material prejudice to a defendant, an appellate court should be slow to reverse evidentiary rulings. Krischbaum v. Dillon (1991),58 Ohio St.3d 58, 66. An abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
With respect to Callender's roommate's testimony that Callender told her she had been raped, defendant contends that the trial court erred in admitting the testimony under the excited utterance exception to the hearsay rule. Evid.R. 803 provides that certain evidence is not excluded by the hearsay rule, even though the declarant is available as a witness. One of the hearsay exclusions, listed under Evid.R. 803(2), is for an excited utterance, which is "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." In the syllabus of State v. Duncan (1978), 53 Ohio St.2d 215, the Ohio Supreme Court provided a four-part test for the admission of evidence as an excited utterance, as follows:
"Testimony as to a statement or declaration may be admissible under an exception to the hearsay rule for spontaneous exclamations where the trial judge reasonably finds (a) that there was some occurrence startling enough to produce a nervous excitement in the declarant, which was sufficient to still his reflective faculties and thereby make his statements and declarations the unreflective and sincere expression of his actual impressions and beliefs, and thus render his statement or declarations spontaneous and unreflective, (b) that the statement or declaration, even if not strictly contemporaneous with its exciting cause, was made before there had been time for such nervous excitement to lose a domination over his reflective faculties, so that such domination continued to remain sufficient to make his statements and declarations the unreflective and sincere expression of his actual impressions and beliefs, (c) that the statement or declaration related to such startling occurrence or the circumstances of such startling occurrence, and (d) that the declarant had an opportunity to observe personally the matters asserted in his statement or declaration."
Defendant does not contend that Callender's statement does not satisfy the first, third, or fourth prongs of the excited utterance test set forth in Duncan. Rather, defendant argues that Callender's statement fails to satisfy the second prong of the test, because "a considerable time period" had passed between Callender's realization that defendant was performing cunnilingus on her, and her statement to her roommate. Defendant is correct that Callender's statement to her roommate did not occur immediately after she realized that defendant was performing cunnilingus on her. However, while there is no direct evidence of how much time elapsed between Callender's realization of defendant's conduct and her statement to her roommate, the reasonable inferences which can be drawn from the evidence indicate that the time was fairly short. Both Callender's testimony and defendant's statement on his videotaped interview indicate that when Callender asked defendant to take her home, defendant drove Callender straight home from where they were parked. In addition, Callender's roommate testified that when Callender made the statement at issue she was very upset, was having trouble talking about the event, and was crying. Together, this evidence indicates that Callender's statement was made before the "nervous excitement" caused by her realization of the events had ceased to control her reflective faculties. Thus, we find no error in the trial court's admission of the statement as an excited utterance.
Defendant also contends that the trial court erred in admitting Callender's roommate's testimony regarding Callender's statement that she had been raped and the several references to rape contained in defendant's videotaped police interview because the confusion and unfair prejudice caused by the references outweighed any probative value they may have had. We find no merit to this claim. Any confusion that the references to rape could have caused was eliminated by the fact that the jury was instructed only on the crime of sexual battery. In addition, the prosecution, at the very beginning of its statement, stated: "Ladies and gentlemen, the defendant is charged with sexual battery. Sexual battery, it is not rape. That is not the charge. The state of Ohio is not alleging rape and does not have to prove rape. The state of Ohio is alleging sexual battery." (Tr. at 50.) With respect to defendant's claim of unfair prejudice, defendant has not explained how he was prejudiced by the admission of the references to rape. There simply is no reason to believe that the references to rape so inflamed the jury that they were unable to fairly judge the merits of the case and follow the court`s instructions on sexual battery.
Defendant's second and third assignments of error are overruled.
In his fourth assignment of error, defendant argues that he was denied a critical opportunity to attack Callender's credibility when the trial court refused to allow defense counsel to present Detective David with a copy of her investigative summary for the purpose of refreshing her recollection.
At trial, Callender testified on direct examination that she and defendant had never been out on a date prior to the night in question. However, Detective David's investigative summary of an interview she conducted with Callender indicates that Callender told her that she and defendant had previously gone out on a date. When defense counsel cross-examined Callender regarding her prior statement, Callender stated that she did not recall making the statement. Thus, laying a proper foundation for the later admission of the investigative summary as extrinsic evidence of Callender's prior inconsistent statement. Evid.R. 613(B)(1); State v. Hartman (Apr. 5, 1999), Clermont App. No. CA98-06-040. When the state subsequently called Detective David as a witness, defense counsel sought to impeach Callender's credibility on cross-examination by questioning Detective David regarding Callender's prior statement that she and defendant had been out on a date prior to the night in question. Specifically, defense counsel asked Detective David whether during her interview of Callender, Callender had stated that she had previously been out on a date with defendant. Detective David replied that she did not remember and would have to review her summary. However, when defense counsel sought to present the summary to Detective David so that she could refresh her recollection and answer the question posed to her by defense counsel the state objected and the court sustained the objection.
On appeal, the state concedes that the trial court erred in sustaining its objection and refusing to allow defendant to refresh Detective David's recollection with her investigative summary. We commend the state for conceding this error. Plainly, defense counsel's questioning of Detective David about Callender's prior statement was a proper attempt to impeach Callender's credibility with extrinsic evidence of a prior inconsistent statement pursuant to Evid.R. 613(B). Evid.R. 613(B) provides in relevant part: "Extrinsic evidence of a prior inconsistent statement by a witness is admissible if * * * (2) [t]he subject matter of the statement is * * * (c) [a] fact that may be shown by extrinsic evidence under the common law of impeachment if not in conflict with the Rules of Evidence." The Staff Notes to Evid.R. 613(B) indicate that the circumstances under which extrinsic evidence of prior inconsistent statements is admissible for impeachment under the rule track the circumstances under which extrinsic evidence of facts which contradict a witness's testimony are permitted under Evid.R. 616(C). In turn, the Staff Notes to Evid.R. 616(C), state that extrinsic evidence which contradicts a witness's testimony and is offered solely for impeachment purposes is admissible where the evidence is "critical to determining the credibility of a witness's story." See State v. Bowman (2001),144 Ohio App.3d 179, 187. In the present case, the fact that Callender told Detective David that she had previously gone on a date with defendant, and then on direct examination by the state emphatically stated that she had "never" had a date with defendant prior to the night in question was critical to determining Callender's credibility. Thus, as the prosecution concedes, defense counsel should have been allowed not only to ask Detective David about Callender's prior statement, but, also, to have used the investigative summary to refresh the detective's recollection so that she could meaningfully respond to the question. The trial court's ruling, effectively prevented defendant from establishing Callender's prior inconsistent statement.
Although the state concedes error in not allowing defense counsel to establish Callender's prior inconsistent statement, it contends that the error was harmless, as the issue of whether defendant and Callender had previously dated was not relevant to the question of whether defendant committed sexual battery on the night in question. The state is, of course, correct that the issue of whether defendant and Callender had previously dated is not relevant to any issue in the case.[1] However, defendant does not contend that the trial court's error in denying him the opportunity to establish Callender's prior inconsistent statement prejudiced him because it left him unable to establish the fact that he and Callender had previously dated. Rather, defendant contends that he was prejudiced by the error because it denied him an opportunity to attack the credibility of his accuser.
In determining whether an error in the admission of evidence was harmless, a reviewing court must find that there is no reasonable possibility that the error contributed to the defendant's conviction. State v. Sorrels (1991), 71 Ohio App.3d 162, 165. Here, the outcome of defendant's trial turned in large part upon whether the jury chose to believe Callender's or defendant's version of the events of the night in question. Thus, Callender's credibility was an absolutely critical issue in the case. When the trial court granted the state's objection and refused to allow Detective David to refresh Callender's recollection about her prior statement, defendant was denied an opportunity to show the jury that Callender had lied, either in her statement to Detective David or in her direct testimony. Further, during his videotaped police interview, defendant stated several times states that he and Callender had in fact dated prior to the night in question. Thus, Callender's prior inconsistent statement would not only have provided defendant with an opportunity to undermine the credibility of his accuser, but might also have served to bolster his own credibility. Given the "he said/she said" nature of the case against defendant, the importance of this opportunity cannot be underestimated. Because defendant's conviction rests entirely on Callender's testimony, we cannot say that there is no reasonable possibility that the trial court's refusal to allow defendant to establish the existence of Callender's prior inconsistent statement did not contribute to defendant's conviction. Accordingly, the error was not harmless.
Defendant's fourth assignment of error is sustained.
Defendant's first, second, and third assignments or error having been overruled, but defendant's fourth assignment of error having been sustained, the judgment of the Franklin County Court of Common Pleas is reversed and this matter is remanded for furth er proceedings consistent with this opinion.
Judgment reversed, case remanded.
TYACK, P.J., and PETREE, J., concur.
[1] Although the state argues on appeal that the issue of whether defendant and Callender had been out on a date prior to the night in question lacks any relevance, it is interesting to note that it was the state that initially raised the issue in its direct examination of Callender. Apparently, at trial, the state felt the issue had some relevance.